| 203 | 151 |
| 206 | 432 |

# Seymour, Appellant, *v.* Tradesmen's Trust and Saving Fund Company.

*Insurance—Title insurance—Subrogation—Mortgages.*

Where a title insurance company insures the title of second mortgages, and also the completion of houses upon the property covered by the mortgages, and in the policy the insured warrant that their rights of subrogation shall vest in the company unaffected by any right of the insured, and subsequently the insured after notifying the company that the houses were not completed according to the plans and specifications, proceed to foreclose the mortgages and buy in the property, and thereafter sell the property to the owners of the first mortgage, the insured cannot recover upon the title policy, inasmuch as they voluntarily put it out of their power to comply with their covenant as to subrogation.

Argued March 24, 1902.   Appeal, No. 378, Jan. T., 1901, by defendants, from order of C. P. No. 4, Phila. Co., June T., 1900, No. 658, refusing to take off nonsuit in case of Edmund B. Seymour and Joseph Savidge v. Tradesmen's Trust and Saving Fund Company.. Before McCollum, C. J., Dean, Fell, Brown and Mestrezat, JJ.   Affirmed.

Assumpsit upon a policy of title insurance.

At the trial it appeared that plaintiffs, who had been the owners of six second mortgages of $1,000 each, secured upon six different properties, subject each to a prior mortgage of $5,500, brought suit on defendants' policy of insurance, dated June 14, 1898, which provided as follows :

" This policy of insurance witnesseth that The Tradesmen's Trust and Saving Fund Company in consideration of the sum of $15 to them paid by Edmund B. Seymour and Joseph Savidge do hereby covenant that they will indemnify, keep harmless and insure the said Edmund B. Seymour and Joseph Savidge . . . . against all loss or damage, not exceeding $6,000, which the said insured shall sustain by reason of defects or unmarketability of the title of the insured to the estate, mortgage, or interest, described in schedule 'A' hereto annexed, or because of liens, or incumbrances, charging the same at the date of this policy; saving estates, defects, objections, liens or incumbrances, excepted in schedule ' B,' or by the conditions of this policy hereto annexed and hereby incorporated into this contract—the loss and the amount to be ascertained in the manner provided in the annexed conditions, and to be payable upon compliance by the insured with the stipulations of said conditions, and not otherwise.

"SCHEDULE 'A.'

"1. The estate or interest of the insured covered by this policy—interest as mortgagee.

"2. (The properties are here accurately described.)

"3. The deed or other means by which title is vested in the insured—mortgages George W. Johnson to the insured dated May 5, 1898, and recorded June 14, 1898, in mortgage book W. M. G. No. 311, pages 375, 369, 364, 359, 353, 347, etc.

## "SCHEDULE 'B'

"Showing estates, defects, or objections to title and liens, charges or incumbrances thereon, which do or may now exist, and against which the company does not agree to insure or indemnify.

"6. Mortgages George W. Johnson to Charles F. Moore $5,500, each dated May 5, 1898, recorded June 14, 1898, in mortgage book W. M. G. No. 366, pages 16, 20, 12, 5, 9, 1, etc.

"This company insures the completion of the houses to be erected on the above described premises according to the signed plans and specifications lodged with this company free and discharged of mechanics' liens and municipal claims within nine months from the date hereof.

## "CONDITIONS OF THIS POLICY.

"1. No claim shall arise under this policy unless (1) the party insured has been actually evicted under an adverse title insured against; or (2) there has been a final judgment upon a lien or incumbrance not excepted in the policy; or (3) unless the insured shall have contracted to sell the insured estate or interest and the title has been rejected, because of a defect or incumbrance not excepted in the policy. In this latter case, the loss or damage, by reason of such defect or incumbrance, shall be payable within thirty days after written notice to the company and proof of loss; unless the company shall demand a valuation of the insured estate or interest, to be made by three arbitrators, or any two of them, one to be chosen by the insured, and one by the company, and the two so chosen selecting an umpire. No right of action shall accrue until thirty days after notice of such valuation shall have been served upon the company, and the insured shall have tendered a conveyance of the insured estate or interest to a purchaser to be named by the company, at such valuation, clear of, or with proper deduction for, all incumbrances other than those hereby insured against; and the company shall have failed, within that time, to find a purchaser for the estate on those terms.

\*     \*     \*     \*     \*     \*     \*     \*

"10. Whenever the company shall have settled a claim under this policy, they shall be entitled to all the rights and remedies which the insured would have had against any other

person or property had the policy not been made. The insured undertakes to transfer to the company such rights, or to permit them to use the name of the insured, for the recovery thereof. If the payments do not cover the loss of the insured, the company shall be interested in such rights with the insured, in the proportion of the amount paid, to the amount of the loss not thereby covered. The insured warrants that such rights of subrogation shall vest in the company unaffected by any act of the insured."

On June 19, 1899, plaintiff wrote defendants a letter alleging that the houses were not completed according to the plans and specifications, and adding: "I am therefore under the necessity of placing the mortgages on the market for public sale and holding your company responsible for any loss by reason of the unfinished condition of the houses."

On July 24, 1899, they again wrote averring certain defects. in the work, adding that the "estimated cost to make the houses ready for occupancy as per plans and specifications is $1,950."

On September 9, 1899, defendants' counsel answered in detail as to the alleged insufficiency of the work, and averred that it was properly done.

In the mean time, between the dates of the last two letters, plaintiffs, without notice to defendants, commenced foreclosure proceedings on their mortgages, recovered judgment thereon, and the sheriff sold the properties thereunder on October 2, 1899. Each property brought $400 at the sale. After the lev. fa., defendants' attorney was given notice of the fact that the sale would take place. The properties were bought in in the interest of plaintiffs, who did some work upon them, and then conveyed them to the first mortgagee, in December, 1899.

On March 27, 1900, plaintiffs made a claim upon defendants for $600 per house, the difference between the face of the mortgage and the price realized at the sheriff's sale.

The court entered a compulsory nonsuit, which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*Joseph A. Slattery,* for appellant.

*Alex. Simpson, Jr*, with him *Francis Shunk Brown*, for appellee.

PER CURIAM, May 19, 1902:

By the terms of the policy the trust company was entitled to subrogation to all the rights and remedies of the insured. As the plaintiffs, by voluntarily conveying the properties to the owner of the first mortgage put it out of their power to comply with their agreement, they were not entitled to recover.

The judgment is affirmed.