# Central Trust & Savings Company v. Henry Kraan Furniture Company, Appellant.

*Contract—Building contract—Bond—Insurance of mortgages—Default of subcontractor—Contract of indemnity.*

1. In a suit by a trust company against a subcontractor, who had defaulted in a building operation, to recover moneys expended by the trust company in completing the subcontractor's work, no judgment can be entered for plaintiff on demurrer, where it appears that the bond given by the subcontractor to the plaintiff recited that at the request of the defendant plaintiff had issued its policies of insurance to various mortgagees to secure them against loss by reason of mechanics' liens, and it also appears that the defendant had in his contract with the principal contractor agreed not to file any mechanics' liens, but there is nothing in the bond or in the policies requiring the plaintiff to do any work on the building, and no averment in the statement that the buildings as they stood with the uncompleted work of the subcontractor, would not have sufficiently protected the plaintiff against the obligations which it had assumed by its policies to persons to whom the policies were issued; and this is the case although in the building contract the general contractor was given the right to do the work if the subcontractor failed, and the bond itself provided that the contract of the defendant with the general contractor should inure to the benefit of the trust company.

2. Such a bond is in truth and in fact an obligation of indemnity only, and does not require the obligor to do any specific work or to bear the expense thereof in case it should be done by any other than the subcontractor.

Argued Dec. 10, 1913. Appeal, No. 155, Oct. T., 1913, by defendant, from judgment of C. P. No. 1, Phila. Co., June T., 1912, No. 4,700, for plaintiff on demurrer to statement of claim in suit of Central Trust & Savings Company v. Henry Kraan Furniture Company. Before RICE, P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ. Reversed.

Assumpsit on a bond.

Demurrer to statement of claim.

The facts are stated in the opinion of the Superior Court.

222 CENTRAL T. & S. CO. *v.* H. KRAAN CO., Appellant.

Assignment of Error—Opinion of the Court.    [57 Pa. Superior Ct.

*Error assigned* was in entering judgment for plaintiff on demurrer.

*J. Quincy Hunsicker, Jr.*, with him *J. Quincy Hunsicker*, for appellant, cited: Wheeler v. Equitable Trust Company, 206 Pa. 428; Weightman v. Union Trust Co., 208 Pa. 449; Equitable Trust Co. v. National Surety Co., 214 Pa. 159.

*Edward Hopkinson, Jr.*, with him *H. Gordon Mc-Couch* and *Abraham M. Beitler,* for appellee.

OPINION BY HEAD, J., July 15, 1914:

The plaintiff founds this action of assumpsit on a bond sealed and delivered by the defendant corporation and claims the right to recover the entire penal sum therein named. To this statement of claim the defendant filed a demurrer assigning a number of reasons in support thereof. The learned court below overruled the demurrer and entered a judgment for the plaintiff for the entire sum named in the bond. From that judgment this appeal was taken.

If it appear from an examination of the bond that it is in essence and substance an obligation for the payment of a definite sum of money upon conditions which the statement filed avers to be now existent, the action of the court below ought not to be disturbed. If, on the other hand, the obligation of the bond was really and truly but to indemnify and save harmless the plaintiff against loss or damage resulting from certain policies of insurance issued by it on the strength of the bond, then under well-established principles that obligation does not become active until the loss against which it indemnified has been averred or established. Now the bond, after the usual penal clause, recites that at the instance and request of the obligor the obligee had agreed to issue its policies of insurance "to various parties as owners, mortgagees, ground-rent owners or

otherwise" covering some ninety-seven houses in the city of Philadelphia "to secure them against loss by reason of liens for the payment of its contract for work and labor done and materials furnished" in and about the erection of said buildings "and all municipal improvements and against all loss or damage by reason of the failure to complete the erection and construction of said buildings and all municipal improvements in accordance with the plans and specifications, etc." It next recites that the defendant obligor had become a subcontractor to do the cabinet and tile work required in the construction of said buildings and had agreed that no mechanic's lien should be filed either by the general contractor, subcontractor, etc. The condition of the obligation is "that if the obligor . . . . shall and do at all times hereafter well and sufficiently save, defend, keep harmless and indemnify the said obligee . . . . of and from all loss, damage, costs, charges, liability or expense for or on account of" any mechanics' or other liens "or in any way arising out of said contract above recited, and shall and do indemnify and keep harmless the said obligee from and against all suits, actions, loss, damages, costs, charges, counsel fees and expenses whatsoever which the said obligee shall or may from any cause at any time sustain or incur by reason or in consequence of the said failure of said obligor, to furnish all labor and material required" to perform its subcontract "and to fully comply with all the terms and conditions of said contract or agreement, then this obligation to be null and void, etc." It is clear, therefore, as we view it, that this bond is in truth and in fact an obligation of indemnity only and not one requiring the obligor either to do any specific work or to bear the expense thereof in case it should be done by any other than the subcontractor.

Now the statement goes on to aver that in reliance upon the contract and bond referred to, the said plaintiff "did issue its bonds or policies of insurance to vari-

ous parties as owners, mortgagees, ground-rent owners or otherwise securing said parties against loss by reason of liens, etc., and against all loss or damage by reason of the failure to complete the erection and construction of said buildings in accordance with the plans and specifications, etc." The plaintiff it will be observed was no party to the written contract. Its interest therein and its right to recover anything on this bond must depend on the fact that it has sustained some loss by reason of the issue of its policies, against which loss the obligation sued on was intended to indemnify it. The statement contains no intimation how many policies were issued by the plaintiffs, in what amounts they were issued, upon what conditions the plaintiff's liability thereunder depended, nor any averment from which it could be determined that it had, by reason of the issue of said policies, suffered any loss equal to the amount named in the bond or any part of it. If these policies insured the security of certain mortgages, then, under the authorities, it is incumbent upon the plaintiff to show that, by reason of the default of the subcontractor, the security of the mortgagees had become impaired to such an extent that the plaintiff was compelled to make good the sum represented by such diminution of the mortgage security. This is clearly the doctrine of Weightman v. Union Trust Co., 208 Pa. 449. In that case Mr. Justice POTTER, defining the difference between the affirmative covenant in a contract to do certain work and the covenant of indemnity contained in a bond, in substance like the one before us, said: "The distinction between the two agreements is simply that between an affirmative covenant for a specific thing, and one of indemnity against damage by reason of the nonperformance of the thing specified. The object of both agreements may have been substantially the same, in that both were intended to save the plaintiff from loss, but the legal effect of the two agreements is essentially different. The defendant is bound to the extent

and in the manner set forth in its obligation, and its liability is not to be extended beyond the express terms of its agreement. We cannot read into the terms of the contract anything more than an agreement to indemnify the plaintiff against any loss which may occur from the failure of Steelman to perform his contract. If the contract was one of indemnity, the well established doctrine is that actual loss must be shown to entitle the plaintiff to recover."

In Wheeler v. Equitable Trust Co., 206 Pa. 428, the court had to deal with a bond somewhat more favorable to the contention of the plaintiff here than the one on which it sues. Mr. Justice DEAN, speaking for the court, said: "But the contract is not intended by its terms to be severed into two, one to indemnify against loss from defects of title and one to guarantee, that the buildings shall be finished in accordance with certain plans and specifications. If the contract were one of guarantee, then the plaintiff, although she may have lost nothing on her collateral, instead may really have largely profited by the sale of it, would have a right to recover; on the other hand, if the contract were one of indemnity alone, she could not recover unless she proved a loss on the mortgage. This is the substance of the decisions in Wheeler v. Real Estate Title Ins. & Trust Co., 160 Pa. 408, and Seymour v. Tradesmen's Trust, etc., Co., 203 Pa. 151. We hold that this policy, taking it as a whole, is a contract of indemnity and recovery can be had on it only as such."

In the case at bar the plaintiff exhibits no policy of insurance issued by it from which the nature or extent of its liability thereunder may be determined. It does not aver that in or by any one of said policies it covenanted or agreed to do any work on any of the said buildings that may have been left undone by the general or any subcontractor. It does not aver that the buildings, as they stood, with the uncompleted work of the present subcontractor, would not have sufficiently pro-

tected it against any and every obligation which by its policies it had assumed to those to whom they were issued. Yet the averment of its statement, upon which it must finally rely to recover, if it recover at all, is that by reason of the default of the subcontractor and by reason of the fact that it had issued its policies described only in the general terms which we have quoted, it became necessary for it to go into the open market and secure the necessary labor and materials to finish the unperformed contract of the subcontractor, and that in doing this it was compelled to expend the sum of $1,840. Resting upon its averment that it was necessary for it to do the things just stated at the cost named, it claims the right to have a judgment on this bond for the full penal sum named therein. How the necessity stated arose we have no means of knowing. We do not regard such an averment as one of fact pure and simple, so that, even on demurrer, it must be taken to be admitted. Rather is it a conclusion the soundness of which can be determined only after a statement of the facts upon which it is predicated.

We are of the opinion that something more must be shown by the plaintiff before it can successfully defend the judgment that has been entered. We are not unmindful of the fact that the obligor in the bond sued on is the subcontractor who, it is alleged, made default in the performance of his contract; nor of the further fact that the contract, a copy of which is attached to the statement, discloses that the general contractor, the other party thereto, was given the right to do the work, if the subcontractor failed, and charge the cost of it to the defaulting subcontractor; nor of the recital in the bond that the contract of the obligor with the general contractor "shall inure to the benefit of the obligee herein." What remedies the plaintiff may have, if it is in a position to sue on the contract, what the measure of its recovery in such an action might be, what defense, if any, could be made by the subcon-

tractor, to justify or excuse his alleged default, we need not now consider. We think the sound administration of legal principles requires us to dispose of this action by a consideration of the covenants of the bond itself just as if parties, strangers to the general transaction, were sureties on this bond and recovery was sought against them. The learned court below therefore should have sustained the demurrer and declined to enter a judgment for the plaintiff on the pleadings as they then stood. We do not, however, find in the record any joinder of issue in the demurrer filed, and there is therefore no proper foundation for the entry of a final judgment in favor of the defendant.

The judgment is reversed and set aside and the record is remitted to the court below with direction to enter the order; demurrer sustained, and a procedendo is awarded. The costs of this appeal to be paid by the appellee.