# Dunlap, Appellant, *v.* Spiese.

*Equity—Loss of evidence—Reopening of case—Discretion of chancellor—Building contracts—Indemnity bonds—Evidence.*

In an equity suit, brought to compel the cancellation of an indemnity bond given by complainant to indemnify defendants from loss resulting from failure to complete a building operation, and to satisfy a judgment which had been entered on the bond, it was not an abuse of discretion for the chancellor to reopen his findings holding the bondsman not liable, in order that important documentary evidence, missing at the time of the trial, might be considered, and thereafter to change his findings and dismiss the bill on the ground that the bondsman was liable, where the missing documentary evidence, when produced, was uncontradicted and when considered with the oral evidence gave sufficient basis for the findings of the court, and justified its conclusion that the bondsman was liable, and where the rights of third parties had not intervened.

Submitted April 21, 1915. Appeal, No. 96, Jan. T., 1915, by plaintiff, from decree of C. P. No. 1, Philadelphia Co., March T., 1914, No. 1884, in Equity, dismissing bill in equity for the cancellation of a bond, in case of Harry C. Dunlap v. Franklin Spiese, Helen M. Spiese, Robert M. Hilands, Rhoads Shee and Mutual Trust Company, a corporation. Before Brown, C. J., Elkin, Stewart, Moschzisker and Frazer, JJ. Affirmed.

Bill in equity for cancellation of a bond. Before Patterson, J.

The opinion of the Supreme Court states the case.

The court found that the bondsman was not liable, but subsequently upon the introduction of certain papers which could not be found at the hearing, dismissed the bill. Plaintiff appealed.

*Error assigned,* inter alia, was the decree of the court.

*Henry A. Hoefler, George S. Russell* and *George deB. Myers,* for appellant.

*Henry J. Scott,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, July 3, 1915:

The defendant, Helen M. Spiese, conveyed a tract of land to Robert M. Hilands, a "straw man"; he created twenty mortgages of $2,000 each, for the purpose of financing a building operation on the ground, consisting of a like number of dwelling houses. Hilands then entered into a written contract, dated January 24, 1913, with another of the defendants, Rhoads Shee, whereby the latter agreed to erect the houses in question, according to certain plans and specifications, within one year from January 24, 1913, free and clear of all liens, for the sum of $40,000. A trust company was to insure against liens and guarantee completion to the mortgagees; but a disagreement arose and the company refused so to do. All parties concerned then secured another of the defendants, Franklin Spiese, to receive the moneys from the sale of the twenty mortgages and pay the subcontractors as the work progressed, he agreeing to guarantee completion to the holders of the mortgages and care for the disbursement of the fund realized from the sale thereof; but before undertaking this, he insisted that the contractor, Rhoads Shee, give security for the faithful performance of his contract. Thereupon, the plaintiff, Harry C. Dunlap, became surety for Shee and executed a bond in the sum of $8,000; this

bond, after the formal obligation and warrant of attorney, recites that the obligee had agreed to insure the owners of the mortgages against loss through municipal and mechanics' liens, and that the obligors had agreed to indemnify the obligee from all losses by reason of his undertaking; it then formally states the condition of the obligation thus: "If the above bounden Rhoads Shee and Harry C. Dunlap......shall and do......save, defend, keep harmless and indemnify the said Franklin Spiese ......and the said premises......of and from all loss, damage, costs, charges, liability or expense on account of any claims or liens for work and labor done or materials furnished, or......on account of any municipal claims that have been or may be filed of record against the above-described premises......and shall fully complete the twenty two-story buildings on the above-described premises in accordance with the plans and specifications on file with the said Franklin Spiese, within one year from the date hereof, then the above obligation to be void, or else to be and remain in full force and virtue. Provided, that should the work on said buildings or street, and other municipal improvements and connections be delayed or suspended for five days without cause satisfactory to said Franklin Spiese, or should the said work not be pushed to the satisfaction of the said Franklin Spiese, it shall be lawful at the option of said Franklin Spiese, but not obligatory upon him, ......to cause said buildings, improvements and connections to be completed at the cost and charges of said obligors, and to recover under this bond any amount expended for the purpose of completion or payment of liens......and in the event of proceeding upon or entry of judgment on this bond for the recovery of any moneys expended for the completion of said buildings, or payment of liens thereon, an account of such expenditures, verified by the affidavit of said Franklin Spiese, shall be prima facie evidence of the amount so expended and of the necessity for such expenditures and the bur-

den of proving the contrary thereof shall be upon the obligor." Dunlap later on conveyed to the defendant, Franklin Spiese, "as additional security for the completion of the......operation," a certain piece of real estate.

During the progress of the work, some of the subcontractors refused to perform their undertakings, and others were secured at additional expense to complete the operation. The houses were not finished within the prescribed year, and this necessitated the payment by Franklin Spiese of interest on the first mortgages, and other expenses, which, together with the additional price he was obliged to pay in order to complete the operation, amounted to more than $15,000. Judgment was entered on the bond given by Dunlap, and he filed a bill in equity against the three defendants already named and the Mutual Trust Company, which had purchased the mortgages, praying that they be restrained from conveying any interest they might have in the property, that the defendant, Franklin Spiese, should be ordered to satisfy the judgment entered on the complainant's bond, for a decree that no liability existed on such bond and that the latter should be cancelled, and finally, that Franklin Spiese be ordered to reconvey the piece of real estate deeded to him as additional security and repay the plaintiff the sum of $1,500, already paid on account of the judgment entered on the bond. An answer was filed, which averred facts showing a substantial loss to Franklin Spiese, and claimed a liability on the bond. Hearing was had on the bill and answer, at which time certain important papers could not be found by the defendants; the trial judge then filed an opinion holding the bondsman not liable. Subsequently the missing papers were discovered and admitted in evidence without material contradiction; the chancellor then changed his material findings, decided that Dunlap was liable, and dismissed the bill; from the decree to that effect the complainant has appealed.

After a review of the entire record, and due consideration of the cases cited by counsel for the appellant, we are not convinced of reversible error. The court below in no wise abused its discretion when, under the peculiar circumstances at bar, the learned chancellor reopened the case and, on the documentary evidence then adduced, changed his findings and conclusions; the justice of the cause required the course pursued, and no third parties were injured thereby. The real point in controversy was whether or not the cost of the ground should be included in the price of $40,000 for the erection of the twenty houses; if it was included, then the obligee in the bond had suffered a substantial loss, whereas, if it was excluded, he incurred no loss. That the obligee occupied a position toward the other parties concerned that entitled him to recover on the bond, does not seem to be questioned; but the point is, did he prove that he had sustained a loss contemplated by the bond and his contract in the premises. The chancellor found there was a deficit or loss amounting to $15,557.48, and that, if the operation had been completed according to the original bids, the contractor would have received a profit of a little over $14,000 "after taking the cost of the ground from the total fund"; that it was understood and agreed to by all parties in interest, when the bond of $8,000 was given by the complainant, that the cost of the ground, amounting to $13,500, was the first item to be taken out of the fund of $40,000 raised by the sale of the mortgages. When the documentary proofs at the last hearing are considered with the oral evidence in the case, they furnish a sufficient basis for the findings of the court below, and fully justify its conclusion of law to the effect that Dunlap, the complainant, was liable on his bond, and that such liability must be determined by the difference between the original contract price of $40,000 and the actual cost to him of completing the houses, including the price of the ground. Of course, the complainant is entitled to credit for any amount which he may have

paid on account of his liability, and, no doubt, he will be allowed such credit in the proceeding to enforce the judgment entered on the bond.

It remains but to say that the evidence depended upon when the court below changed its findings, was explanatory of the real contract between the parties and in no way inconsistent with the written undertaking of Dunlap. The cases relied upon by the appellant: Weightman v. Union Trust Co., 208 Pa. 449; Wheeler v. Equitable Trust Co., 206 Pa. 428, id., 221 Pa. 276; Central Trust & Savings Co. v. Henry Kraan Furniture Co., 57 Pa. Superior Ct. 221, are all distinguishable from the one at bar, for, in each of them, either the parties stood in an essentially different position toward one another, or the contract sued upon differed materially in its terms from the one now before us.

The assignments of error are all overruled and the decree of the court below is affirmed, at the cost of appellant.