Sidney **DANIELSON**, Regional Director of the Second Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner-Appellant,

v.

**LOCAL 275, · LABORERS INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO et al., Respondents-Appellees,**

and

Local 323, United Brotherhood of Carpenters and Joiners of America, AFL–CIO, Respondent.

No. 972, Docket 73–1518.

United States Court of Appeals, Second Circuit.

Argued May 10, 1973.

Decided May 31, 1973.

Marvin Roth, Supervisory Atty., N.L.R.B. (Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Julius G. Serot, Sp. Counsel to the Gen. Counsel, and Michael A. Caldwell, Atty., N.L.R.B., of counsel), for petitioner-appellant.

Ralph P. Katz, New York City (Delson & Gordon, New York City, of counsel), for respondents-appellees.

Before SMITH, MULLIGAN and TIMBERS, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York which denied a petition of Sidney Danielson, Regional Director of the National Labor Relations Board (the Board) for a preliminary injunction pursuant to Section 10($l$) of the National Labor Relations Act, 29 U.S.C. § 160($l$) (the Act). The Hon. Lawrence W. Pierce, District Judge, after a five day hearing, entered an order denying the petition on March 16, 1973 based upon findings of fact and conclusions of law included in his memorandum opinion filed on the same day.

The petition for the Section 10($l$) injunction filed on January 29, 1973 was precipitated by a charge filed with the Board on January 10, 1973 by S.B. Apartments, Inc. (S.B.) alleging that Local 275, Laborers International Union of North America, AFL–CIO; Painters District Council No. 20 of Westchester and Putnam Counties, New York, Brotherhood of Painters, Decorators and Paperhangers of America, AFL–CIO; Local 55, Bricklayers, Masons and Plasterers; and Local 323, United Brotherhood of Carpenters and Joiners of America, AFL–CIO, had engaged in and are engaging in unfair labor practices within the meaning of Section 8(b)(7)(C) of the Act, 29 U.S.C. § 158(b)(7)(C). This Section, in essence, proscribes recognitional or organizational picketing for more than 30 days without filing with the Board a petition for an election under Section 9(c) of the Act, 29 U.S.C. § 159(c). No such petition has been filed. After investigation, the Regional Director concluded that there was reasonable cause to believe that the Unions

were engaging in the unfair labor practices charged and that a complaint should issue. Accordingly, the Regional Director filed the petition in the District Court for injunctive relief pursuant to Section 10($l$) of the Act, pending final disposition by the Board of the unfair labor practice charge. The Unions filed answers which denied the allegations of the petition. The Board has not finally adjudicated the charges.

S.B., the charging party, is the owner of real estate in Cold Spring, New York, where a 63 unit garden apartment complex is being constructed by James A. Klein, Inc. (Klein), a general contractor. Klein and S.B. (collectively referred to as the Employer) are commonly owned and controlled and constitute a single, integrated business enterprise. On October 31, 1972 the representatives of the Employer met in a pre-job conference with the Unions who stated that the job site had to be completely unionized and sought unsuccessfully to have the Employer sign a collective bargaining agreement. On November 1, 1972 the Unions began picketing the job site with between 2 and 200 pickets. The picketing by the Unions [1] has been continuous except for a two week period in late March, 1973, and is still continuing. No petition for an election has been filed with the Board and no charge is before the Board under Section 8(a)(2) of the Act, 29 U.S.C. § 158(a)(2), alleging that the Employer has unlawfully recognized or assisted any labor organization. None of the Unions are now certified as bargaining representatives of any employees of the Employer. On this basis the Regional Director contended that the picketing was not for informational purposes but had as its object forced recognition or bargaining by the Employer with the Unions and forced acceptance by the employees of the Unions as their bargaining agents. The Court below found that the Regional Director has reasonable cause to believe that the Unions have en-

1. The Operating Engineers ceased picketing in the latter part of January, 1973, and pursuant to a stipulation approved by the District Court on February 22, 1973, the Carpenters likewise stopped picketing.

gaged and are engaging in unfair labor practices in violation of Section 8(b)(7)(C) of the Act. Moreover the Court rejected the Unions' claims that the picketing was informational and educational stating:

> the picture that emerges to this Court is clearly one of a series of coercive tactics designed to achieve organizational and recognitional objects. The petitioner's claim that the charging party has been subjected to a campaign of harassment is an accurate assessment of the events which followed the October 31st meeting when the employer refused to agree to the job being 100% union.

Despite these findings of reasonable cause, the lower Court refused to enjoin the union activity on the ground that in a 10(*l*) proceeding general equitable principles must be applied and since it found no "irreparable" damage, the Court concluded that it would not be "just and proper" to issue the extraordinary relief of a preliminary injunction. McLeod v. Local 25, IBEW, 344 F.2d 634 (2d Cir. 1965). We reverse and remand for the entry of a preliminary injunction enjoining the unfair labor practices charged pending disposition of the charges before the Board.

On appeal there is no question of jurisdiction raised nor have the Unions raised any issue with respect to the propriety of the finding that the Regional Director had reasonable cause to believe that the Unions were engaged in unfair labor practices in violation of Section 8(b)(7)(C) of the Act. The sole issue posed by the parties is whether the issuance of a preliminary injunction under Section 10(*l*) depends upon the application of general equitable principles which the Court below interpreted to require a showing of irreparable harm to the Employer, or whether as the Regional Director contends the irreparable harm concept applicable in private actions is not pertinent in a Section 10(*l*) case. The Regional Director reasons that the purpose of 10(*l*) was not to prevent irreparable damage to the Employer but to protect the public interest in maintaining the free flow of commerce and to encourage collective bargaining.

■ The Supreme Court has not yet passed upon the criteria for granting a preliminary injunction under either Section 10(j) or 10(*l*).[2] In McLeod v. Local 25, IBEW, *supra,* 344 F.2d at 638, this Court in discussing the question stated:

> In § 10(*l*) proceedings the function of the federal district court consists of

2. In a section 10(j) case, this Court has reversed the granting of a temporary injunction where the Regional Director has not shown that irreparable harm was threatened or that an injunction was necessary to preserve the *status quo.* McLeod v. General Elec. Co., 366 F.2d 847 (2d Cir. 1966). In staying the enforcement of this Court's judgment, Mr. Justice Harlan noted that the standards governing the application of Section 10(j) were unsettled. McLeod v. General Elec. Co., 87 S.Ct. 5, 17 L.Ed.2d 45 (1966). The case eventually became moot before the Supreme Court could decide the question. McLeod v. General Elec. Co., 385 U.S. 533, 87 S.Ct. 637, 17 L.Ed.2d 588 (1966). The District of Columbia Circuit has rejected the idea that the Regional Director must claim irreparable harm. International Union, UAW v. NLRB, 145 U.S. App.D.C. 384, 449 F.2d 1046, 1051 (1971).

There are readily apparent differences between 10(j) and 10(*l*). In a 10(j) case the Board is not required to seek a temporary injunction and it may seek interim relief only after it has issued a complaint. Under 10(*l*), the Regional Director must seek an injunction whenever he has reason to believe that any person has committed one of the specified unfair labor practices. An *ex parte* restraining order under 10(*l*) requires a showing of "substantial and irreparable injury to the charging party." A comparison of 10(j) and 10(*l*) has led some commentators to suggest "that in Section 10(j) cases the courts will place greater emphasis on the traditional equity criteria for injunctive relief applicable in suits between private parties than they do in Section 10(*l*) cases." ABA, The Developing Labor Law 851 (C.Morris ed. 1971).

determining (1) whether the temporary injunctive relief would be "just and proper" in terms of general equitable principles and (2) whether there is "reasonable cause" for the Regional Director "to believe such [unfair labor practice] charge is true and that a complaint should issue."

We see no reason here to depart from this statement of the law. Section 10 (*l*) *in haec verba* provides that the District Court shall have jurisdiction to grant such injunctive relief "as it deems just and proper." The Section therefore does not mandate the preliminary injunction simply because the District Court concludes that the Regional Director has reasonable ground to believe that an unfair labor practice has occurred. The Act gives the Court discretion by employing the "just and proper" language. See United Brotherhood of Carpenters & Joiners v. Sperry, 170 F.2d 863, 869 (10th Cir. 1948). In *Local 25, supra,* our Court simply held that in applying the "just and proper" norm the District Court should be guided by the application of general equitable principles. We see no impropriety in this since the District Court albeit authorized by the statute to grant injunctive relief, is exercising its equity powers.

■ We see no point in now deciding whether irreparable harm to the Employer must always be shown in a Section 10(*l*) case because in any event there was a clear showing of substantial and irreparable harm to the Employer which under any construction of the Act should have resulted in the issuance of the preliminary injunction sought by the Regional Director.[3]

We believe that the Court below was perhaps misled not by the language we have quoted from *Local 25* which stated that "general equitable principles" must be applied, but by the further statement in that case that Local 25's picketing

"posed an imminent threat of irreparable injury, *viz.,* halting the construction of the additional wing of the hospital." 344 F.2d at 639. We cannot read this language as implying that anything less than a total work stoppage does not amount to irreparable injury. The Court below found that construction at the job site was not substantially halted; however, that the progress of the work was delayed and that extra expense was incurred and prospective rentals lost, emerges clearly from the other findings of the Court and the record before us.

Thus the Court found that on four separate dates in December the respondent Unions in concert blocked entrances and exits to the job sites and prevented employees from entering and leaving the job site; on two occasions a truck driver was prevented from making a delivery of supplies to the site; truck drivers from two other suppliers were blocked from making deliveries until police moved the pickets out of the way; extra costs of over $4000 are estimated by the Employer. In its discussion of the issues the Court states that the Employer's original completion date was March of 1973 and now it is estimated to be June of 1973. While the record may not clearly establish that all of the delay is attributable to the picketing, it is fair to assume that some portion of it had to be caused by the continued program of harassment found below. This harassment included tires slashed, telephone wires to the Employer's field office cut and a bulldozer smashed at the job site, together with picketing at a 500′ x 500′ site by from 2 to more than 200 pickets from November 1st to the present time. In addition to the $4000 extra costs claimed, the delay will obviously prevent apartment rentals from accruing to the Employer until such later time as the building may be completed.

While the Court below found that no irreparable injury to the Employer has

3. The danger of laying down hard and fast rules for the guidance of courts in determining whether injunctions should issue, has been long since recognized. Whalen v. Union Bag & Paper Co., 208 N.Y. 1, 4, 101 N.E. 805 (1913), quoting 2 J. Story, Equity Jurisprudence § 959b (10th ed.).

been shown since December 1972, it is inescapable that the initial deliberate blockage of supplies and vandalism have a continued delaying effect upon the completion of the project, its availability to tenants and a postponement of rentals. The picketing concededly continues [4] and there is reasonable cause to believe that it is unlawful. We do not agree therefore that it is just and proper to withhold equitable relief simply because the picketing has failed to shut down the operation but only delays performance which results in the incurring of expenses and prevention of profits.

■ The concept of irreparable injury in equity traces back to the early assumption of jurisdiction by the Courts of Chancery to enjoin waste, continuing trespass and nuisance. Irreparable injury is suffered where monetary damages are difficult to ascertain or are inadequate. (See cases collected in Z. Chaffee & E. Re, Cases and Materials on Equity chap. 15 (5th ed. 1967)). A construction contract is characteristically one where a breach or interference with performance results in damages which are not readily or accurately determinable. (See C. McCormick, Damages § 155, at 619 (1935); 2 J. Pomeroy, Equity Jurisprudence § 442f, at 254 (5th ed. S. Symons 1941)). In this case assuming that the Unions would be responsible for damages (see San Diego Building Trades Council v. Garmon, 359 U.S. 236, 247, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); United Const. Workers v. Laburnum Const. Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954)), the amount of damage attributable specifically to union activity is clearly difficult to assess and measure.

■ As we have had occasion to point out recently a basic purpose of a preliminary injunction is to maintain the *status quo.* Exxon Corp. v. City of New York,

480 F.2d 460 (2d Cir. 1973); cf. Sen. Rep.No.105, 80th Cong., 1st Sess. (1947), in 1 Legislative History of the Labor Management Relations Act, 1947, at 433 (1948). The failure to issue an injunction here maintains not the *status quo,* but protects what the Court below has found the Regional Director had reasonable ground to believe, is a violation of the statute. See Henderson v. Local 701, Operating Engineers, 420 F.2d 802, 808–809 (9th Cir. 1969).

In applying general equitable prinples, we fail to see how there is any possible weighing of hardships in favor of the Unions. In fact the Court below found that if the injunction issued, the harm to the Unions would be "minimal" since through their 4½ month continuing picketing plus extensive newspaper, radio and television coverage they have achieved whatever "educational" goals are the ostensible justification for their activity. While we fully appreciate the dangers inherent in conducting labor management relations by way of injunction even though the Act specifically confers the power on the Court, McLeod v. General Elec. Co., 366 F.2d 847, 850 (2d Cir. 1966), set aside and remanded, 385 U.S. 533, 87 S.Ct. 637, 17 L.Ed.2d 588 (1967), we are of the view that the deliberate and unlawful "campaign of harassment" found to exist by the Court below and the substantial damage inflicted as a result thereof were the type of mischief that Section 10(*l*) was designed to prevent. It was "just and proper" here to issue the injunction and the failure of the Court below to do so constitutes in our view reversible error. National Maritime Union v. Commerce Tankers Corp., 457 F.2d 1127, 1133–1134 (2d Cir. 1972).

Reversed and remanded for entry of a preliminary injunction enjoining the unfair labor practices pending disposition of the charges by the Board.

4. In *Local 25, supra,* which involved consolidated appeals in two proceedings, the picketing had ceased in one case before the injunctive relief was granted, but this Court held that an injunction would contribute to stabilizing the situation.