Samuel M. KAYNARD, Regional Director of the Twenty-ninth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner-Appellant,

v.

INDEPENDENT ROUTEMEN'S ASSOCIATION, Respondent-Appellee.

No. 968, Docket 73–1480.

United States Court of Appeals, Second Circuit.

Argued May 11, 1973.

Decided June 1, 1973.

Marvin Roth, Supervisory Atty., N.L.R.B. (Peter G. Nash, Gen. Counsel; John S. Irving, Deputy Gen. Counsel; Julius G. Serot, Sp. Counsel to the Gen. Counsel; Charles I. Cohen and Peter B. Mirsky, Attys., N.L.R.B., of counsel), for petitioner-appellant.

Marc A. Rosenberg, Mineola, N.Y. (Rosenberg, Rosenberg & Rockman, Mineola, N.Y., of counsel), for respondent-appellee.

Before SMITH, MULLIGAN and TIMBERS, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal from an order of the United States District Court for the Eastern District of New York, Hon. Anthony J. Travia, presiding. The order appealed from denied a petition for a preliminary injunction filed on behalf of the National Labor Relations Board (the Board) pursuant to Section 10(*l*) of the National Labor Relations Act (the Act), 29 U.S.C. § 160(*l*). The order was entered on March 12, 1973 based upon findings of fact and conclusions of law in the Court's opinion entered on the same day. Reversed and remanded.

The petition and amended petition for the Section 10(*l*) injunction were predicated upon a charge filed with the Board on January 30, 1973 by Urban Distributors, Inc. (Urban) alleging that the respondent, Independent Routemen's Association (Union), a labor organization, had and was continuing to engage in unfair labor practices within Section 8(b)(4)(ii)(B) of the Act, 29 U.S.C. § 158(b)(4)(ii)(B), prohibiting certain types of secondary boycotts. In essence the charge was that the Union, to further a labor dispute with Lorenz Schneider, Inc. (Lorenz), a franchise distributor of snack products in the New York metropolitan area, was engaged in an unlawful secondary boycott by picketing various retail stores which carry, stock and sell food products sold to them by Urban and other independent distributors who do business with Lorenz. The Regional Director of the Board determined after investigation that there was reasonable cause to believe that the Union was engaged in an unfair labor practice and filed the Section 10(*l*) petition. The Court below issued a temporary restraining order on March 2, 1973, conducted a hearing on March 7, 1973 and on March 12, 1973 issued its order dismissing the petition. A panel of this Court granted a temporary injunction and expedited the appeal.

Lorenz distributes Wise Potato Chips, Quinlan Pretzels, Old London Cheese Doodles and other snack products (Wise Products) throughout the New York metropolitan area. Lorenz' method of operation is to sell routes to independent dealers. Urban is one of several purchasers of such routes from Lorenz. Since December, 1972, the Union has been engaged in a labor dispute with Lorenz concerning its recognition as the bargaining representatives of Lorenz' employees. To further its strike against Lorenz, the Union has engaged as found below in a campaign to force a number of supermarkets and grocery stores to remove Wise Products from their shelves. Stores which carry Wise Products were visited by Union members and were threatened with a picket line unless they discontinued these sales. When some retailers refused, picketing was

promptly commenced with chanting and signs proclaiming:

*ON STRIKE*

WISE POTATO
QUINLAN PRETZEL
OLD LONDON DRIVERS
AGAINST
LORENZ SCHNEIDER CO. INC.
DISTRIBUTORS

I

It is beyond any question that the role of a district court in a Section 10($l$) proceeding is not to adjudicate the merits of the alleged violation, but rather to decide whether the Regional Director had reasonable cause to believe that the respondent has violated the Act. Reasonable cause has been interpreted to mean that there must be a "reasonable possibility" that the Board will sustain the unfair labor practice charge. McLeod v. Local 25, IBEW, 344 F.2d 634, 638 (2d Cir. 1965). That the Court's function is so circumscribed has been held in numerous cases and in fact is not disputed here on appeal. (See NMU v. Commerce Tankers Corp., 457 F.2d 1127, 1133 (2d Cir. 1972); Sachs v. Local 48, Plumbers, 454 F.2d 879 (4th Cir. 1972); Kennedy v. Los Angeles Typographical Union No. 174, 418 F.2d 6 (9th Cir. 1969); Schauffler v. Local 1291, Int'l Longshoremen's Ass'n, 292 F.2d 182, 187 (3d Cir. 1961)). Neither can there be any question that the Court below committed reversible error in not limiting itself to the question as to whether or not there was reasonable cause for the Regional Director to find a violation of Section 8(b)(4)(ii)(B) of the Act, but rather finding on the merits that there was no violation of that Section. McLeod v. Local 282, Teamsters, 345 F.2d 142, 145 (2d Cir. 1965). Without any discussion of the pertinent facts, the Court below made twelve identical Findings of Fact (Findings 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45) which repeat with respect to individual supermarkets or grocery stores that: "the acts engaged in, from the evidence in this case, all reveal a compliance with the guide-lines set forth in the aforementioned cases [NLRB v. Fruit & Vegetable Packers, Local 760, 377 U.S. 58 [84 S.Ct. 1063, 12 L.Ed.2d 129] (1964) (picketing and handbilling); NLRB v. Servette, Inc., 377 U.S. 46 [84 S.Ct. 1098, 12 L.Ed. 2d 121] (1964) handbilling alone)], i. e., the 'union's appeal to the public is confined to its dispute with the primary employer, since the public is not asked to withhold its patronage from the secondary employer, but only to boycott the primary employer's goods.' NLRB v. Fruit and Vegetable Packers, etc., 377 U.S. at 63 [84 S.Ct. 1063]." These conclusory findings relate to acts of picketing and make no reference to the threats to the retailers of picketing, including the distribution of handbills which contained unqualified threats of picketing if the stores continued to carry Wise Products. In the conclusions of law made below, again without explication, the Court simply found that the

[p]etitioner does not have reasonable cause to believe that:

a) The charges filed by Urban Distributors, Inc., is [sic] true and constitutes a violation of subsection (B) of Section 8(b)·(4)(i)(ii) of the Act, "affecting commerce" within the meaning of Sections 2(6) and (7) of the Act.

■ At no place do we find any discussion of the facts or law pertinent except the conclusory findings of fact set forth above. The only questions properly before the Court as we have indicated were whether the Regional Director, not the Court, had reasonable cause to believe that the unfair labor act charged was occurring and if so whether it was "just and proper" under Section 10($l$) to issue the preliminary injunction.

II

■ There is no question that the picketing here would be violative of Section 8(b)(4)(ii)(B) of the Act as a secondary boycott unless the activity of the Union is within the *Tree Fruits* decision, NLRB v. Fruit & Vegetable Packers, Local 760, 377 U.S. 58, 84 S.Ct. 1063,

12 L.Ed.2d 129 (1964). In *Tree Fruits* the Court held that if the picketing at a secondary site is employed only to persuade consumers not to buy the struck product there is no violation of the Act. Unlawful secondary pressure exists where the picketing goes beyond and urges the public not to deal at all with the secondary employer. The retailer then "stops buying the struck product, not because of falling demand, but in response to pressure designed to inflict injury on his business generally. In such case, the union does more than merely follow the struck product; it creates a separate dispute with the secondary employer." *Tree Fruits, supra*, 377 U.S. at 72, 84 S.Ct. at 1071 (footnote omitted).

 The picketing in the instant case was in front of the retail stores and the Regional Director of the Board contends that it was, in fact, directed *at* those stores. When the union elects to picket at a secondary site, it assumes the obligation of clearly identifying the struck product. NLRB v. San Francisco Typographical Union No. 21, 465 F.2d 53, 56 (9th Cir. 1972); Bedding, Curtain & Drapery Workers v. NLRB, 390 F.2d 495 (2d Cir.) cert. denied, 392 U.S. 905, 88 S.Ct. 2056, 20 L.Ed.2d 1363 (1968); see ABA, The Developing Labor Law 602–03 & n. 47 (C. Morris ed. 1971). The Regional Director claims that the picket signs here do not clearly show that the union's dispute is limited to the primary employer, *i. e.*, the signs do not specifically request the public not to buy the struck foods. We have studied the photographs of the pickets contained in the record on appeal. "On Strike" appears in the boldest lettering at the top; "Lorenz Schneider Co. Inc., Distributors" appears in smaller typeface at the bottom.

The leaflets passed out to consumers do not further clarify the nature of the labor dispute. On the record before us, we think the Regional Director had reasonable cause to believe that the picketing did not clearly identify the retailers as neutrals, unconnected with the primary employer. The dispositive factor is the probable effect of the picketing upon the consumer. Hoffman v. Cement Masons Union, Local 337, 468 F.2d 1187, 1192 (9th Cir. 1972).

 Some retailers elected not to deal in the struck products rather than have a picket line outside their stores. At the hearing before Judge Travia, retailers testified that striking union members visited their stores and threatened to picket unless Wise Products were removed from the shelves. The retailers were given a handbill which, after reciting the Union's dispute with Lorenz, stated: "All stores disregarding this request [not to buy Wise Products] will be subject to picketing without notice." We think that the Regional Director had reasonable cause to believe that these *general* threats of picketing were unlawful secondary pressure within the meaning of § 8(b)(4)(ii)(B). See NLRB v. Local 3, IBEW, 467 F.2d 1158, 1160–1161 (2d Cir. 1972).

In view of the loss of custom created by the picketing, we find that a preliminary injunction pursuant to Section 10(*l*) would be "just and proper." (See Danielson v. Local 275, Laborers, 479 F.2d 1033 (2d Cir. 1973) ). There is evidence in the record, for example, indicating that Urban suffered severely because of this labor dispute and is in danger of financial collapse.*

We reverse and remand to the District Court for entry of an appropriate injunctive decree.

---

* It is an elementary proposition that lawful picketing is not rendered unlawful merely because it has a serious economic impact on neutrals. See, *e. g.*, Brotherhood of R. R. Trainmen v. Jacksonville Terminal Co., 394 U.S. 369, 390, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969). In his affidavit in support of the Regional Director's petition for the injunction, the President of Urban stated that Urban's precarious financial condition was the result of the "unlawful secondary pressures exerted by the [Union] upon Urban's retail independent and chain store customers forcing them to discontinue purchasing Urban products . . . . ."