509 F.2d 1371
 88 L.R.R.M. (BNA) 2625, 76 Lab.Cas. P 10,648
 Sidney DANIELSON, Regional Director of the National Labor
Relations Board, Region 2, for and on behalf of
the National Labor Relations Board,
Petitioner-Appellant,
v.
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION
NO. 501, AFL-CIO, Respondent-Appellee.
 No. 345, Docket 74--1927.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 11, 1974.
Decided Jan. 31, 1975.
 
 Marvin Roth, Deputy Asst. Gen. Counsel, National Labor Relations Bd., Washington, D.C. (Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Gerald Brissman, Associate Gen. Counsel, Eric Moskowitz, Atty., Washington, D.C., on the brief), for petitioner-appellant.
 Ralph P. Katz, New York City (Delson & Gordon, New York City, on the brief), for respondent-appellee.
 Before FEINBERG and MULLIGAN, Circuit Judges, and BRYAN, District Judge.*
 FEINBERG, Circuit Judge:
 
 
 1
 Sidney Danielson, Regional Director of the National Labor Relations Board, Region 2, appeals from an order of the United States District Court for the District of Connecticut, Jon O. Newman, J., denying a petition for an injunction sought by appellant under section 10(l) of the National Labor Relations Act, 29 U.S.C. § 160(l),[1] pending resolution of unfair labor practice charges against respondent International Brotherhood of Electrical Workers, Local Union No. 501, AFL-CIO. Concluding that the Board's petition rested on an erroneous legal theory, the district judge denied injunctive relief. We affirm the judgment of the district court, but on other grounds.
 
 
 2
 * The charges against the Union were filed in April 1974 by the Associated General Contractors of Connecticut, Inc., an employer bargaining association, on behalf of Atlas Construction Company, alleging that the Union had violated section 8(b)(4)(B) of the Act, 29 U.S.C. § 158(b)(4)(B), which prohibits secondary boycotts. Secondary boycott claims usually involve complicated facts and this case is no exception. For our purposes, however, the facts may be briefly summarized as follows: In March 1974, Atlas was functioning as the general contractor for construction of two buildings in Stamford, Connecticut. Atlas had subcontracted the electrical work, exclusive of the provision of temporary power for construction purposes, to Peter M. Santella Co. and Rice Electrical Contracting Co. The electricians employed by these subcontractors were all members of, or represented by, the Union. A clause in the Union contract with Santella and Rice[2] provided that:
 
 
 3
 Where wiring systems and equipment are required for lighting, power, heat, etc., during the period of construction of a building, these systems and equipment shall be installed, maintained and operated by electrical workers.
 
 
 4
 When the Union discovered that nonelectrician employees of Atlas were assigned to operate the switch controlling the temporary power supplies at the construction sites, it removed its members briefly from the jobs, claiming a violation of this clause. The electricians returned to work for Santella when he agreed to pay out of his own pocket the overtime salary of an electrician to stand by while Atlas's employees turned off the temporary power after the electricians' usual quitting time. Thus, as Judge Newman pointed out, the Union secured 'at least the economic benefit' of its contract with Santella 'without any action on the part of the general contractor (Atlas).' The dispute with Rice apparently was never formally resolved, but the electricians soon returned to work.
 
 
 5
 Appellant Regional Director maintains that the Union's actions amounted to a secondary boycott intended to force Atlas to subcontract the temporary electrical work to Santella and Rice, instead of performing it more cheaply for itself. According to the Regional Director, Santella and Rice are mere neutrals caught in the crossfire of this dispute. The Union, on the other hand, contends that the quoted contract language is merely a work preservation clause, which requires employers like Santella and Rice to see to it that their agreements with general contractors like Atlas entitle them to perform the temporary electrical work so that Union members will be able to do it. The failure of Santella and Rice to drive such a bargain with Atlas is all that the strike was directed against.
 
 
 6
 Judge Newman rejected what he regarded as the Regional Director's assertion that an unlawful secondary boycott can be established by showing only that coercive pressure was exerted upon an employer which at the time of the dispute had no right of control over assignment of the disputed work.[3] According to the judge:
 
 
 7
 The Board has repeatedly sought to assert secondary activity on the basis of a per se right of control test, and has been rebuffed by the Courts of Appeals of five circuits, all of which have viewed right of control as only one relevant but not the determining factor in identifying secondary acivity.[4]
 
 The district court concluded that:
 
 8
 (W)hen an employer is subjected to coercive pressure after he has negotiated the contract that places him in violation of his own agreement with a union, that pressure, in the absence of activity directed at third parties, is primary within the meaning of § 8(b)(4)(B).
 
 
 9
 Relying on our decision in Danielson v. Joint Board, ILGWU, 494 F.2d 1230, 1239--1245 (1974), Judge Newman denied the injunction because in his view the Board was relying on an incorrect legal theory unlikely to be accepted by this court, and dismissed the action.
 
 
 10
 The Regional Director filed his notice of appeal on June 26, five weeks later. Some time after that, the construction projects were completed. The Regional Director sought no stay of any kind and made no effort to expedite the appeal. Consequently, it was not argued until December 11, 1974.
 
 
 11
 Commendably, however, the unfair labor practice charge before the Board was processed very promptly. After the consolidated complaint against the Union was issued, a hearing before the administrative law judge was held on May 21. Apparently, the evidence included only the record made before Judge Newman in the last week of April and the testimony of a single witness; the briefs consisted essentially of the memoranda submitted to the district court. On June 27, the administrative law judge (a former General Counsel of the Board) dismissed the complaint in its entirety. Exceptions were filed and the case was submitted to the Board by the last week of August. No decision has yet been rendered.
 
 II
 
 12
 The case now stands just short of being moot. A decision in the unfair labor practice proceeding, now pending before the Board for over five months, would render an opinion by us advisory. Sears Roebuck & Co. v. Carpet Layers Local 419, 397 U.S. 655, 90 S.Ct. 1299, 25 L.Ed.2d 637 (1970); Los Angeles Herald-Examiner v. Kennedy, 400 U.S. 3, 91 S.Ct. 12, 27 L.Ed.2d 2, vacating, 430 F.2d 317 (9th Cir. 1970). But cf. Solien v. Miscellaneous Drivers Local 610, 440 F.2d 124, 127--128 (8th Cir.), cert. denied, 403 U.S. 905, 91 S.Ct. 2206, 29 L.Ed.2d 680 (1971). Even if this case is not technically moot, however, we are not disposed to reverse the district court on the present record.
 
 
 13
 On a number of occasions, we have discussed the standards to be used in deciding whether a district court should issue a 10(l) injunction. Almost ten years ago, in McLeod v. IBEW Local 25, 344 F.2d 634, 638 (2d Cir. 1965) (Marshall, J.), we held that:
 
 
 14
 In § 10(l) proceedings the function of the federal district court consists of determining (1) whether the temporary injunctive relief would be 'just and proper' in terms of general equitable principles and (2) whether there is 'reasonable cause' for the Regional Director 'to believe such (unfair labor practice) charge is true and that a complaint should issue . . ..'
 
 
 15
 In Danielson v. Laborers Local 275, 479 F.2d 1033, 1036 (2d Cir. 1973), we reaffirmed this holding, saying:
 
 
 16
 We see no reason here to depart from this statement of the law. Section 10(l) in haec verba provides that the District Court shall have jurisdiction to grant such injunctive relief 'as it deems just and proper.' The Section therefore does not mandate the preliminary injunction simply because the District Court concludes that the Regional Director has reasonable ground to believe that an unfair labor practice has occurred. The Act gives the Court discretion by employing the 'just and proper' language. See United Brotherhood of Carpenters & Joiners v. Sperry, 170 F.2d 863, 869 (10th Cir. 1948). In Local 25, supra, our Court simply held that in applying the 'just and proper' norm the District Court should be guided by the application of general equitable principles. We see no impropriety in this since the District Court albeit authorized by the statute to grant injunctive relief, is exercising its equity powers.
 
 
 17
 See also Danielson v. Joint Board, ILGWU, supra.
 
 
 18
 With these statements in mind, one factor we should consider in this case is whether there is a pressing need for extraordinary equitable relief. Appellant has recently emphasized to us that
 
 
 19
 the purpose of 10(l) was not to prevent irreparable damage to the Employer but to protect the public interest in maintaining the free flow of commerce and to encourage collective bargaining.
 
 
 20
 Danielson v. Laborers Local 275, supra, 479 F.2d at 1035. Assuming arguendo that this is so, one wonders how significant the public interest sought to be vindicated by an injunction now is, in the face of appellant's leisurely prosecution of the present appeal. This court stands ready, if the circumstances justify it, to give the fastest consideration consonant with sound judgment to cases in which the Government (or any party) seeks review of the grant or denial of preliminary relief. See, e.g., Socialist Workers Party v. Attorney General of the United States, 509 F.2d 253 (2d Cir. 1974); United States v. New York Times Co., 444 F.2d 544 (2d Cir.) (en banc), rev'd, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). Section 10(l) itself provides that 'the preliminary investigation' of the charge here against the Union 'shall be made forthwith and given priority over all other cases except cases of like character . . .' and if 'the officer or regional attorney' handling the matter 'has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition' the district court for interim relief. (Emphasis added.) It cannot be that the command to Board personnel to give priority to cases of this sort somehow loses its force once a petition has been filed in the district court and the injunction has been denied.
 
 
 21
 We feel justified, then, in taking appellant's failure to seek expedited review as a recognition that there is no real danger of irreparable harm to the public interest in the limited period until the Board rules in the pending unfair labor practice proceeding. See Fuchs v. Steel-Fab, Inc., 356 F.Supp. 385, 388 (D.Mass.1973). Cf. Getreu v. International Typographical Union, 205 F.Supp. 931 (S.D.Ohio 1962). Indeed, appellant's prime purpose in taking this appeal seems to be to obtain from still another circuit a ruling on application of the right of control doctrine, assertedly the underlying legal issue here. In view of the Board's unhappy experience to date on this issue in many other cases,[5] we can understand why appellant seeks to obtain a holding which might stimulate a grant of certiorari. But we do not see why, on an appeal from denial of a preliminary injunction, we should encourage appellant in this quest when the need for interim relief is doubtful, appellant's position on the merits is questionable in view of the district court's decision, and the issue will ultimately be presented in fuller and final form after the Board has acted on the unfair labor practice charge.[6] The fact that the review of that order may be in another circuit and the Board prefers to take its chances here is not an overpowering reason to grant equitable relief.[7]
 
 
 22
 The need for preliminary relief is further diminished by the completion of the construction projects with which the Union was allegedly interfering. Although appellant cites cases which hold that a suit for section 10(l) injunctive relief is not mooted by the cessation of a claimed unfair labor practice, these cases, if anything, make--rather than harm--the point we regard as determinative. For example, in Laborers Local 275, supra, the Regional Director had been, as here, unsuccessful in the district court. But then he moved in this court, a month later, for a temporary injunction and for an expedited appeal. Both were granted and argument was heard less than a month after the motion. See also Kaynard v. Independent Routemen's Ass'n, 479 F.2d 1070 (2d Cir. 1973) (motion of Regional Director for temporary injunction and expedited appeal made within one month after district court denied injunction; injunction pending appeal granted; appeal heard one month after motion); National Maritime Union v. Commerce Tankers Corp., 457 F.2d 1127 (2d Cir. 1972). In other cases relied upon by appellant, the appeal by the Regional Director seems to have been taken much more expeditiously than this one[8] or the cases are distinguishable for other reasons.[9] It is true that in Douds v. International Longshoremen's Ass'n, 242 F.2d 808 (2d Cir. 1957), we reversed an order denying section 10(l) injunctive relief although apparently the Regional Director did not press for a speedy appeal. In Douds, however, a union had engaged in particularly offensive strongarm conduct which, if repeated, threatened to disrupt the whole New York waterfront. In addition, we there relied, 242 F.2d at 812, on a construction of section 10(l) that the Supreme Court has since made clear was erroneous. Sears Roebuck & Co. v. Carpet Layers Local 419, supra; see also Vincent v. Teamsters Local 294, 424 F.2d 124, 129 n. 10 (2d Cir. 1970).
 
 
 23
 Appellant does claim in his brief that because 'the Union's primary dispute has not been resolved, it may fairly be anticipated . . . that . . . the Union will resume or repeat its unlawful conduct or similar or like acts and conduct.'[10] But appellant cites no support for this assertion in the record. The district judge made no finding of fact on the issue.[11] As we indicated above, a key consideration for us is whether the public interest now requires us to direct the district judge to grant an injunction for the period--the duration of which is determined by the Board--until the Board decides the unfair labor practice proceeding. Under all the circumstances, we are unwilling to do so. Of course, our decision here should not be construed as indicating any view on the underlying question whether the Union's activity is properly characterized as primary or secondary.
 
 
 24
 The judgment of the district court is affirmed.
 
 
 
 *
 Of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 The section provides:
 (l) Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(A), (B), or (C) of section 158(b) of this title, or section 158(e) of this title or section 158(b)(7) of this title, the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law
 
 
 [2]
 The contract was with an association of electrical contractors, to which Santella and Rice belonged
 
 
 [3]
 The Regional Director maintains that the Board does not use a per se right of control test, but looks to all the circumstances--with the right of control taking a significant place--in determining whether a boycott is secondary
 
 
 [4]
 The district court cited the following authorities: Carpenters Local 742 v. NLRB, 144 U.S.App.D.C. 20, 444 F.2d 895, cert. denied, 404 U.S. 986, 92 S.Ct. 447, 30 L.Ed. 371 (1971); Beacon Castle Square Bldg. Corp. v. NLRB, 406 F.2d 188, 192 n. 10 (1st Cir. 1969); NLRB v. IBEW Local 164, 388 F.2d 105, 109 (3d Cir. 1968); American Boiler Mfrs. Ass'n v. NLRB, 404 F.2d 556, 560--561 (8th Cir. 1968); Western Monolithics Concrete Prods., Inc. v. NLRB, 446 F.2d 522, 526 (9th Cir. 1971); Danielson v. Painters Dist. Council 20, 305 F.Supp. 1108 (S.D.N.Y.1969). Since the district judge's opinion, the Court of Appeals for the District of Columbia Circuit has again ruled squarely against the Board, Carpenters Local 433 v. NLRB, 509 F.2d 447 (1974). But see George Koch Sons, Inc. v. NLRB, 490 F.2d 323 (4th Cir. 1973), which Judge Newman distinguished
 
 
 [5]
 See note 4 supra
 
 
 [6]
 That the very issue on which a decision is now sought can thus be presented for review serves to distinguish Solien v. Miscellaneous Drivers Local 610, supra, relied on by appellant. In that case, the issue was not a substantive one, as it is here, but rather was whether the charging party could appear or intervene as a party in a section 10(l) proceeding in the district court, a question which the Eighth Circuit assumed would not be reviewable in any other proceeding
 
 
 [7]
 Counsel for the Union candidly admitted at oral argument that he would advise his client to seek review of an adverse Board ruling in the District of Columbia Circuit since decisions there make it seem unlikely that the court would uphold an unfair labor practice finding
 
 
 [8]
 Retail Clerks Local 137 v. Food Employers Council, Inc., 351 F.2d 525 (9th Cir. 1965) (less than four months from grant of injunction to which Regional Director objected until decision of court of appeals)
 
 
 [9]
 E.g., it was clear that the particular charge was but a specific instance of a general pattern of unlawful union conduct, see Slater v. Denver Bldg. & Constr. Trades Council, 175 F.2d 608, 610--611 (10th Cir. 1949), or the courts had found the illegal action likely to recur, see Shore v. Building & Constr. Trades Council, 173 F.2d 678, 682 (3d Cir. 1949); cf. McLeod v. Local 25, IBEW, supra, 344 F.2d at 639
 
 
 [10]
 Appellant's Brief, 55--56
 
 
 [11]
 This does not mean that the placement of the burden of showing the likelihood of repetition would be the same were we asked to enforce a Board order. See NLRB v. Raytheon Co., 398 U.S. 25, 90 S.Ct. 1547, 26 L.Ed.2d 21 (1970)