Herbert S. DAWIDOFF, Acting Regional Director of the Eighteenth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

Civ. No. 4–76–422.

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 13, 1976.

Richard P. Prowell, Asst. Regional Atty., N. L. R. B., Minneapolis, Minn., for petitioner.

Samuel I. Sigal, Minneapolis, Minn., for respondents.

## MEMORANDUM AND ORDER

MILES W. LORD, District Judge.

Before the Court is a petition for injunctive relief brought by the National Labor Relations Board under Section 10(*l*) of the National Labor Relations Act, as amended. 29 U.S.C. § 160(*l*).

The petition alleges that respondents have been and are engaging in unfair labor practices within the meaning of Section 8(b)(7) subparagraphs (A) and (C) of the Act. 29 U.S.C. § 158(b)(7)(A) and (C). Specifically, the Acting Regional Director asserts that he has "reasonable cause to believe" that respondents' picketing was directed at forcing or requiring the target employer, Krasen Plumbing and Heating, Inc., to recognize or bargain with them where:

1) Krasen had lawfully recognized another labor organization and questions of representation could not be raised; and

2) the picketing had been continuous for a period exceeding thirty days without a petition for an election being filed.

The Court issued an Order to Show Cause on September 29, 1976, for a hearing set for October 4, 1976. The hearing was continued until October 8, 1976, at the request of respondents, thereby allowing both parties time to fully brief their legal arguments and prepare their cases for the required evidentiary showing.

In light of the facts adduced at the October 8 hearing, this Court would not have issued the order it did restraining respondents from picketing Krasen at the Howard Lake construction site for a period of ten days but for the decision of the United States Court of Appeals for the Eighth Circuit in *Wilson v. Milk Drivers and Dairy Employees Union, Local 471,* 491 F.2d 200 (8th Cir. 1974). In that case, the Eighth Circuit held that the standard of "reasonable cause" is satisfied if there is a showing of factual issues which must be resolved by the National Labor Relations Board. *Wilson v. Milk Drivers and Dairy Employees Union, Local 471, supra,* at 203. Further the district courts are to abandon their reluctance to issue injunctions under Section 10(*l*) when there is a substantial conflict in the evidence. *Kennedy v. Sheet Metal Workers International Association Local 108,* 289 F.Supp. 65, 91 (C.D.Cal.1968). Therefore, the Court issued the restraining order for the express purpose of obtaining a clarification on this rule from the Circuit Court by providing the Board with an opportunity ripe for review.

The relevant facts are as follows. On or about August 5, 1976, respondents engaged in bannering the gate used by Krasen's employees at the Howard Lake School construction site. The banner stated that the mechanical work being performed on the job by Krasen was being done at substandard wages and benefits for the area. Respondents contend that the bannering was for the sole purpose of forcing Krasen to pay the prevailing area standard wage and was not for the purpose of forcing or requiring Krasen to recognize or bargain with them. This bannering was done pursuant to the advice of counsel for respondents and was done for informational purposes only, within the guidelines for legal substandard wage bannering.

Petitioner, to the contrary, presented two witnesses, employees of Krasen, who testi-

fied that two of respondent Council's employees came to the job site on July 27, 1976, and suggested to one of the employees, Donald J. Clemmer, that he attempt to organize the shop for the AFL–CIO. This overture was allegedly made during a time when Krasen was organized under an agreement with the United Construction Workers, Local 84, affiliated with the Christian Labor Association (CLA). Specifically, Donald J. Clemmer testified he was approached by William F. (Tiny) Johanneck to organize the shop on behalf of the Minneapolis Council, AFL–CIO. Mark Jenson, Clemmer's apprentice, testified he overheard the conversation and that Johanneck did ask Clemmer to organize the shop for the AFL–CIO. This conversation allegedly took place while Krasen was under an agreement with the CLA.

Respondents produced Johanneck and Leonard C. Bienias, also from the Council, who testified the sole purpose for their appearance at the job site that day was to check union cards and to inquire about the wages being paid. Both Johanneck and Bienias denied Clemmer's version of the conversation. Furthermore, on cross examination of Donald J. Clemmer, respondents' counsel successfully impeached the witness' credibility by revealing that Clemmer had at one time been a member of the AFL–CIO, but had lost his membership over a dispute with the union during a period when he was an employer engaged in sheet metal construction. The circumstances surrounding his loss of membership were left somewhat vague but suffice it to say that Clemmer's demeanor evidenced substantial bias and prejudice against the union. Based on this and the other evidence adduced, this Court would not have issued the order but for the conflicting testimony of Clemmer and his young apprentice. All the other contradicted testimony demonstrated that the union's activity at the Howard Lake construction site was for the purpose of bringing Krasen's wages up to the area standard in order to protect union members and union employers in a highly competitive market. The union sought advice of its counsel so that any area standards wage

bannering would be legal and would be confined to the employer paying the substandard wages. Further, the union knew Krasen and its employees were under an agreement with the United Construction Workers Union, Local 84 at the time of the alleged conversation and when the bannering began.

However, the Court was compelled to issue the restraining order because the record presented "conflicting evidence from which different inferences and conclusions may be drawn . . .," the resolution of which by the Court ". . . would constitute an invasion of the fact finding function reserved by Congress to the Board." *Wilson v. Milk Drivers and Dairy Employees Union, Local 471, supra,* at 206.

This decision was made with great reluctance in light of the very evidence which compelled its making. There is no question that the evidence is conflicting and, depending upon the weight accorded the various testimony, an ultimate determination on the merits may result in a decision either for or against the petitioner. It appears to this Court that the conflicting evidence test is unnecessarily restrictive and does not accord to the district courts in this circuit the full extent of their equity jurisdiction. Paraphrasing Mr. Justice Douglas in *Hecht Co. v. Bowles,* 321 U.S. 321, 329–330, 64 S.Ct. 587, 88 L.Ed. 754 (1944), a grant of jurisdiction hardly suggests an absolute duty to do so unless Congress intended to make a drastic departure from traditional equity practice. It is recognized that district Courts should apply general equity criteria when the Board seeks an injunction under Section 10(j). *McLeod v. General Electric Co.,* 366 F.2d 847 (2nd Cir. 1966). The Second Circuit has also held that traditional equitable principles should equally apply to an injunction petition brought under Section 10(*l*). *Danielson v. Joint Board of Coat, Suit and Allied Garment Workers' Union,* 494 F.2d 1230, 1242 (2nd Cir. 1974); see also, *Danielson v. International Brotherhood of Electrical Workers, Local 501, AFL–CIO,* 509 F.2d 1371, 1375 (1975). Notwithstanding the pri-

ority these cases are to be given, this Court reads Section 10(*l*) as only providing the Board an opportunity to obtain interim relief by seeking an injunction from the district courts. It is worth noting that the Board itself has no authority to enjoin unfair labor practices. Therefore, it does not seem appropriate that the courts should be restricted only to a consideration of whether there is conflicting evidence when the equitable remedy may, for all intents and purposes, render the administrative proceedings before the Board moot. This is likely to be the situation here. The Board's Counsel, Mr. Prowell, indicated that a decision may take from six months to one and a half years. Testimony at the hearing revealed that if the injunction issued, the work at Howard Lake could be completed before the Board itself ever received the decision from the administrative law judge. If injunctive relief were granted in this case pending final adjudication by the Board, what was intended to be interim relief may actually result in a final adjudication. This was not the intent of Congress. *Danielson v. Joint Board, et. al.,* 494 F.2d at 1241 (1974).

In *Danielson, supra,* 494 F.2d at 1245, the Second Circuit said:

> "When 'reasonable cause to believe' turns on disputed issues of fact, the Regional Director may assume these in favor of the charge and the district court should sustain him if his choice is within the range of rationality."

In light of the requirement that the parties are to be given an opportunity to present relevant testimony at a hearing once a petition is filed, determining the range of rationality of the Director's "reasonable cause to believe" must necessarily be based on the testimony adduced at the hearing. Ordinarily, the Court, whether sitting as a tribunal of law or equity, would be required to judge the evidence and weigh the testimony of all the witnesses. Based on the testimony given and weighing the credibility of each witness, this Court would conclude that the injunction should not lie.

Moreover, Section 10(*l*) does not mandate issuance of an injunction merely because the district court may conclude that the Director has reasonable cause to believe that a violation has occurred. The Act gives the courts discretion by employing the "just and proper" language and applying general principles of equity. *McLeod v. IBEW Local 25,* 344 F.2d 634 (2nd Cir. 1965); *Danielson v. Laborers Local 275,* 479 F.2d 1033, 1036 (2nd Cir. 1973). The purpose of Section 10(*l*) is not to prevent irreparable harm to the employer but to protect the public interest. *Danielson v. Laborers Local 275, supra,* 479 F.2d at 1035. Although the Court heard rumors of adverse impact on the public interest, the Board made no such showing. Furthermore, there is an adequate legal remedy available and it is being pursued by the Board. Namely, the Board has received the complaints and has scheduled a hearing before an administrative law judge on October 28, 1976. Under an expedited schedule, the Board could and should render its opinion within the immediate future. Administrative delays or the apparently sluggish administrative procedures employed by the Board do not render the statutory legal remedy inadequate and certainly the Board's own encumbered bureaucracy should not be a basis for interim relief, absent a specific showing of hardship unique to each case. The Board cannot have it both ways. Either the Courts should have more latitude to decide when an injunction should lie or the Board should be able to reach a decision on the merits substantially faster than the current schedule indicates.

However, on the authority of the *Wilson* case, *supra,* this Court has issued an order restraining the picketing of Krasen at the Howard Lake School construction site. This order was issued with the understanding that the Board will take an appeal within the ten day period. It is this Court's belief that the matter is so postured that the Court of Appeals can make its ruling as a matter of law and give its advice to the Court before the expiration of the Order. Provided further that if this Court is advised that the matter is being considered by

the Court of Appeals, the order will continue until such time as an opinion is issued.

On the basis of the foregoing, picketing of Krasen Plumbing and Heating, Inc. at the Howard Lake School construction site is enjoined for a period of ten days, commencing Monday, October 11, 1976.

IT IS SO ORDERED.