# Wheeler, Appellant, *v.* The Equitable Trust Company.

*Insurance—Title insurance—Mortgage—Indemnity.*

Where a policy of title insurance of a mortgage is by its terms a general contract of indemnity against loss from defects or unmarketability "of the title of the insured to the estate, mortgage or interest" in the real estate included in the mortgage, and the policy contains in a note to a schedule a guaranty to complete certain buildings according to plans and specifications mentioned, the court will construe the whole contract to be one of indemnity; and where it also appears that the insured, who held the mortgage as collateral for a loan, had bought it in at his own sale, permitted by the terms of the loan, at a price equal to the loan, and thereafter had foreclosed the mortgage and bought in the real estate, the insured will not be permitted in an action on the policy to show a defect in title or that the houses had not been completed in accordance with the plans and specifications. In such a case it is immaterial that the insured, and not a stranger, bid the mortgage up and bought it in at an amount equal to the loan, and it is also immaterial that the only other bidder was the insolvent borrower. The insured having bought the mortgage at a price equal to the loan, suffered no loss, and is therefore entitled to no indemnity.

Argued March 27, 1908. Appeal, No. 389, Jan. T., 1907, by plaintiff, from judgment of C. P. No. 5, Phila. Co., March T., 1901, No. 309, on verdict for defendant in case of Susan Farnum Wheeler, Executrix of the last Will and Testament of Charles Wheeler, deceased, v. The Equitable Trust Company. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Assumpsit on a policy of title insurance.

The facts appear by the opinion of the Supreme Court, and by the previous report of the case in 206 Pa. 428.

At the trial the plaintiff made the following offer:

Mr. Johnson: I am willing that the case shall be tried upon the acceptance of fact that at the time the mortgage was sold

by the holder of the judgment note there was not then due upon the judgment note, principal, interest and costs in a sum greater than the $53,000.

The Court : Then you can make your offers and we can have the whole question settled by the court in banc.

Mr. Johnson : So that your honor's ruling will now be upon a state of facts appearing upon the record, which meets what was in your mind as to the only reason why you would permit proof.

Upon this supposition of facts the plaintiff now offers to prove that the title of the mortgaged premises was defective in that the right to the bed of the street had not been acquired. And also prove that the houses had not been completed in accordance with the plans and specifications. That they were incomplete in very important particulars. That without the knowledge or assent of the mortgagee, the holder of the judgment note, the plan of construction had been altered so that the houses thus constructed were less valuable. That by reason of the noncompletion of the houses in accordance with the plans and specifications and title insurance policy, the houses themselves would require upwards of $13,000 to complete, and that such expenditure would be required in order to make the construction in accordance with the title insurance contract. That by reason of the incompleteness of the buildings, the mortgage was less valuable than it would have been by about $18,000. That is our offer.

Objection. Objection sustained. Exception. [1]

We also offer to prove that at the sale of the mortgage made by the owner of the judgment note there were but two bidders, Mr. Pharaoh, the debtor, who was at the time insolvent and the owner of the judgment note.

The Court: I assume the insolvency was known to the plaintiff at the time.

Mr. Johnson : Yes ; the insolvency was known to the owner of the judgment note, and that can be shown.

Objection. Objection sustained. Exception. [2]

The court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1, 2) ruling on evidence, quoting the bill

of exceptions; (3) in giving binding instructions for defendant.

*John G. Johnson*, with him *C. Berkeley Taylor*, for appellant.—An indemnity such as the one in the suit where loss is shown is violated, and if the subject guaranteed does not come up to the guarantee, a right of action arises. The mere fact that plaintiff purchased for the amount of her loan properties which had defects not apparent, does not interfere with her right, because when she bought them she bought them together with the guarantee: Driesbach v. Bridge Co., 81* Pa. 177; Holloway v. Jacoby, 120 Pa. 583.

The above cases determine that where guarantees are given, if the things guaranteed do not come up to the guarantee, a defense may be made to an action for their price, or if that has been paid over an action may be maintained to recover for any loss sustained.

Besides, in the present case, the offer goes on to show that the only bid against plaintiff at the public sale was that of Pharaoh, who was insolvent and, therefore, in the nature of puffing and not bona fide: Pennock's Appeal, 14 Pa. 446.

*Francis Shunk Brown* and *Ira Jewell Williams, of Simpson & Brown*, for appellee.—Appellant having herself purchased the pledge for a sum sufficient to make her whole, this must be regarded as satisfaction of the debt and she cannot now claim a loss: Wheeler v. Equitable Trust Co., 206 Pa. 428; Weightman v. Union Trust Co., 208 Pa. 449.

OPINION BY MR. JUSTICE MESTREZAT, May 11, 1908:

A brief statement of the uncontroverted facts in this case will show that the learned trial judge was right in directing a verdict for the defendant.

John D. Pharaoh borrowed $50,000 from the plaintiff, for which he gave his judgment note, dated May 25, 1898. At the same time and as of the same date he executed and delivered to plaintiff, as collateral security for the payment of the principal and interest of the note, a bond and mortgage for $61,500 upon seventeen yearly ground rents, issuing and payable out of seventeen lots of ground in the city of Philadelphia. The note given to secure the indebtedness refers to the

bond and mortgage as collateral security for its payment, and authorizes the payee, the plaintiff, " upon the nonpayment of the semiannual interest for the space of thirty days after the same shall have become due, to sell and transfer (the bond and mortgage) without any previous demand or notice to me and without any public notice, and to apply the net proceeds . . . . to the payment of this note in full or partially as said proceeds may suffice . . . . and at any such sale as aforesaid the said Susan Farnum Wheeler, executrix as aforesaid, is expressly empowered to become the purchaser provided she shall be the highest bidder therefor."

The defendant company on the same day, May 25, 1898, executed a policy of insurance to the plaintiff in which it covenanted to indemnify and keep harmless the plaintiff " against all loss or damage, not exceeding $50,000, which the said insured shall sustain by reason of defects or unmarketability of the title of the insured to the estate, mortgage or interest " ·in the ground rents included in the mortgage given by Pharaoh to the plaintiff, and therein also guaranteed the completion of seventeen buildings upon the seventeen lots out of which the ground rents issued.

Default was made by Pharaoh in payment of the interest due on the loan, and on January 28, 1899, the plaintiff, by virtue of authority contained in the note, offered the bond and mortgage for sale at public auction, and purchased the same for the sum of $53,000. The handbill or public notice of the sale contained on its face the following : " Accompanying this mortgage is a title policy of the Equitable Trust Company insuring title and completion of the houses." Subsequently the plaintiff proceeded to foreclose the mortgage, and purchased the ground rents mentioned therein for $500, and later sued out the ground rents and purchased the properties for $50.00 each, finally becoming the owner of the properties on March 19, 1900.

To March Term, 1901, of the court of common pleas, No. 5, of Philadelphia county, the plaintiff brought an action of assumpsit on the policy of title insurance issued by the defendant company. The breach averred was the failure to complete the houses according to the plans and specifications filed by Pharaoh with the defendant company. The trial court en-

tered a compulsory nonsuit, and the judgment was subsequently reviewed by this court in Wheeler v. Equitable Trust Company, 206 Pa. 428. The action was brought and the right to recover was claimed on the theory that the provision of the policy guaranteeing the completion of the houses was in law a guarantee, and that the plaintiff could recover by proving the loss. The judgment of the court below, however, was affirmed, and it was held that the title policy was a contract of indemnity and not a guarantee; that the plainly expressed intent was to indemnify against loss from defects or unmarketability of title; that if any loss should be sustained by the plaintiff by reason of the noncompletion of the buildings such loss should come under the indemnification covenant of the policy. It was further held (p. 433): " As preliminary to a recovery on the stipulation of the note to schedule " B " (guaranteeing the completion of the houses) plaintiff must show that she has not been indemnified and saved harmless on her collateral mortgage; that defendant has failed in that particular; then she can go further and show that the failure to complete the building caused, or tended to cause, the loss."

On January 28, 1904, the plaintiff brought another action of assumpsit on the same policy to recover the sum of $15,000, with interest from February 25, 1899. The statement sets forth the loan and the collateral given to secure it; a copy of the note in the title policy guaranteeing the municipal improvements and the completion of the seventeen buildings; the proceedings by which the bond, mortgage, ground rents and title to the property were vested in the plaintiff; alleges that the houses had not been completed according to the plans and specifications; that the mortgage was depreciated to the extent of the cost necessary to make the houses conform to the plans and specifications and the cost of opening the street and introducing the water through the same into the houses, and averred that the defendant would not indemnify the plaintiff according to the terms of its policy, whereby she had lost the sum of $15,000.

On the trial the plaintiff proved certain preliminary facts, and then offered to show that the title of the mortgaged premises was defective because the bed of the street had not been acquired and the houses had not been completed in accordance

with the plans and specifications ; that the plan of construction of the houses had been altered without the knowledge of the mortgagee, so that the houses cost less to construct under the new plan and were less valuable ; that it would cost upwards of $13,000 to complete the houses and make the construction in accordance with the title insurance contract, and that by reason of the incompleteness of the buildings the mortgage was less valuable than it would have been by about $18,000. The plaintiff further offered to prove that at the sale of the mortgage she and Pharaoh, the debtor, who was insolvent, were the only two bidders. The plaintiff's counsel admitted that at the time the mortgage was sold by the holder of the note, there was not due upon the note more than $53,000, the price at which the mortgage was sold. The offers were rejected and a verdict was directed for the defendant.

As suggested above, the statement of the undisputed facts clearly discloses that the plaintiff cannot maintain this action. The facts presented or offered to be shown in the present action are substantially the same as appeared in the former case. The contention there was that note B of the policy was a guarantee, and hence the plaintiff could show the loss sustained by reason of the failure of Pharaoh to complete the houses and secure certain municipal improvements. When the case was here before we held that the title policy, note B included, was a contract of indemnity against loss on the mortgage, and that, therefore, there could be no recovery for a failure to complete the houses or to secure the municipal improvements, unless the plaintiff prove a loss on the mortgage. In other words, the title policy indemnified the plaintiff to the extent of $50,000 against loss on the mortgage which was given as collateral security for the payment of the loan made by the plaintiff to Pharaoh. Under that interpretation of the title policy, before the plaintiff could recover thereon she was required to show that she had sustained a loss on the mortgage. If no such loss occurred, then it was wholly immaterial whether the municipal improvements had been secured or the houses had been completed, so far as liability on the policy was concerned.

The loan by the plaintiff to Pharaoh was $50,000, for which the note of May 25, 1898, was given. The bond and mortgage

were given as collateral security for the payment of the note. As a further security, the plaintiff procured the defendant's title policy in suit. The liability of the plaintiff in this action rests solely upon that policy. If there has been no breach of it there can be no recovery here. That policy insured the plaintiff against loss on the mortgage. The defendant, therefore, according to our decision in the former case, indemnified the plaintiff against loss to her on the mortgage. That is the only liability which the defendant assumed in the policy. If there is no loss, there is no liability on the policy. The note given to secure the loan authorized, as we have seen, the plaintiff to sell the mortgage on default of Pharaoh to pay the semiannual interest. The mortgage was given as collateral security for the payment of the principal and interest of the note for $50,000, and the title policy was given to secure plaintiff against loss on the mortgage to the extent of $50,000 by reason of the unmarketability of the insured's title to the mortgaged estate. The plaintiff proceeded in the manner pointed out in the note to sell the mortgage. This was optional with her. She had the right to use any and all of the collateral securities she held to enforce payment of her loan to Pharaoh. She exercised the privilege and sold the mortgage. The sale was at public auction, and the mortgage was sold for the sum of $53,000. It is admitted by the plaintiff that that sum covered the principal, interest and costs of the note given to secure the loan, and for which the mortgage was given as collateral security. How can it be, therefore, that the plaintiff has sustained any loss upon the mortgage? If a scire facias had been issued on the mortgage there could only have been a recovery for the debt, interest and cost of the note which the mortgage was given to secure. The sum for which the mortgage sold at public auction, it is conceded, covers fully the note given to secure the loan. How, under the facts, can it affect the defendant's liability on the title policy, that the houses were not completed or the municipal improvements were not secured? As we have distinctly ruled, the liability of the defendant is for loss on the mortgage, and the fact must be conceded that there was no loss upon the mortgage. The purchaser of the mortgage at public auction manifestly believed that the property, with the houses incom-

plete and without the municipal improvements, was fully worth the amount bid and paid for the mortgage. That must be assumed; but if it were not so, and if the value of the property was less than the mortgage, wherein is the plaintiff, the mortgagee, injured? Fifty-three thousand dollars, covering the loan and note secured by the mortgage, were realized by the plaintiff from the sale of the mortgage. This is the full amount of indemnity to which the plaintiff was entitled on her title policy. It seems to us that there is no ground whatever, in view of our former interpretation of the contract evidenced by the policy, for the contention that there is any liability resting upon the defendant company by reason of anything contained in the offers of proof by the plaintiff on the trial of the cause.

It is claimed, however, that the liability of the defendant company on the policy is changed or is different by reason of the fact that the plaintiff, and not a stranger, was the purchaser of the mortgage at the sale, and, therefore, that she may show that the mortgaged property was not equal to the amount of the note or claim secured by the mortgage. Hence, it is contended that the mortgage was less valuable than it would have been had the buildings been completed according to the plans and specifications filed with the defendant. But how can the fact that the plaintiff, and not a stranger, was the purchaser of the mortgage affect the question of the defendant's liability? It could not be contended that if a third party had purchased the mortgage and paid $53,000 in cash to the plaintiff, there could be any liability on the title policy. That sum, as we have seen, wiped out the entire indebtedness of Pharaoh to the plaintiff and hence satisfied the mortgage given as collateral to secure its payment. That the plaintiff became the purchaser of the mortgage can in no way, as it seems to us, present the matter differently from what it would be if a third party had been the purchaser. She sold the mortgage at auction by authority contained in the note securing the loan. She had control of the sale and she was expressly empowered to become a purchaser of the mortgage at the sale. There was only one condition imposed upon her in becoming a purchaser and that as stipulated in the note, was that she " be the highest bidder therefor." The amount of her bid was of course

wholly discretionary with her. She was not compelled to bid at all, nor was she required by the terms of her contract or under the law to bid any sum for the mortgage in order to protect her loan. All she was required to do, under the power contained in the note authorizing a sale of the mortgage, was to make the sale according to the terms of the authority conferred upon her. Had she complied with those terms and made a bona fide sale of the mortgage, and a loss had resulted, she could have had recourse to the title policy to indemnify herself. Her bid on the mortgage was simply a matter of her own pleasure, and not required for the protection of her loan. She must, therefore, be regarded the same as any other bidder at the sale and the amount of her bid must, as if made by a third party, be applied on the mortgage which fully satisfies it and the loan secured by it.

We are unable to see that the insolvency of Pharaoh, the other bidder at the sale of the mortgage, affects this case. We cannot go into the question and ascertain whether Pharaoh was bidding for himself or another party who was able to pay the purchase price. It may well be that he had made the necessary arrangements to protect his property by securing another party to purchase the mortgage. In fact, it appears that he tried to secure delay in the sale of the mortgage for that very purpose. Be these facts as they may, the authority to sell and the control of the sale were entirely with the plaintiff. Unless she so desired, no sale could have taken place, and certainly no sale could have been consummated without a bona fide purchaser who could and did pay the purchase price. Under these facts, it must be assumed that the plaintiff made her bid for the mortgage believing it to be worth the price she bid. She, therefore, as purchaser of the mortgage, occupies the position of a stranger, and must account for the $53,000 and apply it to the mortgage. This is conceded to be the full value of the mortgage, and the plaintiff having received that sum she has sustained no loss which imposes a liability on the defendant company by reason of the issuance of its title policy to her.

We are of opinion that the cause was rightly determined by the court below, and, therefore, the assignments of error are overruled and the judgment is affirmed.