Jean A. KNAPP, as Administratrix of the Estate of Joseph Knapp, Deceased, Individually and on behalf of the Independent Shareholders' Committee for Fox-Knapp Manufacturing Co., Plaintiff,

v.

Sol WALDEN et al., Defendants.

No. 73 Civ. 4534.

United States District Court, S. D. New York.

Dec. 5, 1973.

------

Lipper, Keeley, Lowey & Dannenberg, New York City, for plaintiff.

Rubin, Wachtel, Baum & Levin, New York City, for defendants Fox-Knapp Mfg. Co., Sol Walden, and Lee H. Cohen; Abraham G. Levin, Carl Robert Aron, New York City, of counsel.

LASKER, District Judge.

Plaintiff, Jean Knapp, a minority shareholder of Fox-Knapp Manufacturing Co. ("the Company"), seeks a preliminary injunction setting aside the election of directors which occurred at the Company's Annual Shareholders Meeting and mandating the scheduling of a new meeting to elect directors. The motion is predicated on alleged violations of Rule 14a–7 of the Securities Exchange Commission ("SEC"), 17 C.F.R. § 240.14a–7, by management, to wit, defendants, Sol Walden and Lee Cohen, who are directors and who control between them 42% of the Company's shares (Plaintiff's Memorandum, Schedule II). Specifically, Knapp charges defendants with failing to provide "as promptly as practicable" the information necessary to prepare an opposition proxy mailing and to send out the proxies "with reasonable promptness" as required by the rule.

Defendants deny any violation of Rule 14a–7 and argue further that equitable relief is barred because 1) Knapp is guilty of laches; 2) she comes to the court with "unclean hands", having herself violated Sections 13(d) and 14(a) of the Securities Exchange Act (15 U. S.C. §§ 78m(d) and 78n(a)) and the regulations thereunder; 3) equity will not mandate a futile act, which, they allege, a new election would be, and 4) preliminary injunctive relief should not be accorded when it is mandatory in form and would have the effect of giving plaintiff the entire relief sought.

The Court of Appeals for this Circuit has recently reiterated the rules which guide a district court in deciding a motion for a preliminary injunction:

"We repeatedly have emphasized the heavy burden on a party seeking the extraordinary remedy of preliminary injunctive relief. The standard that has evolved is that the moving party 'assume[s] the burden of demonstrating *either* a combination of probable success and the possibility of irreparable injury *or* that [it has] raised serious questions going to the merits and that the balance of hardships [tips] sharply in [its] favor.' Stark v. New York Stock Exchange, 466 F.2d 743, 744 (2d Cir. 1972) (emphasis added); Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319, 323 (2d Cir.), cert. denied, 394 U.S. 999, [89 S.Ct. 1595, 22 L.Ed.2d 777] (1969)." Pride v. Community School Board, 482 F.2d 257, 264 (2d Cir. 1973); *accord*, Pride v. Community School Board, 488 F.2d 321 at 324 (2d Cir. 1973).

We conclude that plaintiff has not satisfied either of the tests spelled out in *Pride*.

Knapp alleges that Walden and Cohen caused undue delays in sending out their proxy materials, so that many shareholders did not receive them in time to return them before the shareholders meeting. As a result, a significant proportion of shareholders are said to have been disenfranchised by being denied the opportunity to vote for the opposition and, plaintiff claims, she and her collaborators lost a real chance of winning the election. Knapp argues that by their course of conduct defendants violated Rule 14a–7.

Rule 14a–7 provides that, upon request of a shareholder, the issuer shall either 1) "promptly" furnish him with a shareholders' list (14a–7(c)) or 2) pro-

vide him "as promptly as practicable" with the information necessary for him to prepare a mailing to be carried out by management (14a–7(a)) and, upon receipt of the materials to be sent, mail them "with reasonable promptness" (14a–7(b)). In this case, management opted for the latter course and the sole issue before us is whether it acted with the requisite promptness.

■ In order to determine the matter, it is necessary to follow the chronology of events which preceded the shareholders meeting. On October 1st, Knapp and various other persons (collectively "the committee") agreed among themselves to put up an opposition slate of directors at the Company's annual meeting. (Transcript (hereinafter "Tr.") at 7, 56–7.) On the 4th, management's proxies were mailed, Knapp receiving hers on the following day. (Tr. at 8.) The committee's proxy materials were filed with the SEC on the 9th (Tr. at 8) and were cleared for release on the 12th. (Tr. at 63.) On the 10th, the committee hand-delivered its request for 14a–7 information to the Company (Tr. at 10), which responded by the 16th (Tr. at 13). The committee delivered its proxy materials on the 17th. (Tr. at 15.) They were mailed on the 18th by the Company's transfer agent. (Tr. at 85.) October 22nd was a mail holiday and as a result a large number of public shareholders who do not reside in the New York area did not receive the committee's proxies in time to return them before the meeting on October 25th. (Tr. at 20.)

The two relevant periods in which management was obliged to act under 14a–7 were the period from October 10th to 16th (after it received the committee's request for 14a–7 information) and the period from October 17th to 18th (the time between the delivery of the committee's materials and their mailing). As to the first, the evidence indicates that plaintiff requested 14a–7 information in letters written to both Walden (who was away) and Cohen on October 10th (Tr. at 10), that the transfer agent was requested to collect the information on the 11th (Tr. at 83) and that the information was given to the Company on the 12th (Tr. at 83) and was transmitted to plaintiff's attorney on the 16th (Tr. at 13, 64). Knapp particularly emphasizes the period from the 12th to the 16th as a time of undue delay. However, that delay is not as great as first appears since the 13th and 14th fell on a weekend, thus depending on when the information reached the Company's offices the delay was 2–2½ business days.

As to the second period, from plaintiff's delivery of her proxy materials to the Company (October 17th) to the time of their being sent out by the transfer agent (October 18th), the uncontroverted evidence without doubt supports defendants' claim that they acted as expeditiously as possible. John McAteer, an employee of First National City Bank, the Company's transfer agent, testified that he was instructed by the Company "to handle [plaintiff's proxy mailing] in an expeditious manner, which we did." (Tr. at 84.) He further testified that, had the mailing taken place in the normal manner, it would not have gone out until the 23rd, whereas in fact the mailing was sent on the 18th. (Tr. at 85.) Accordingly, we are satisfied that, as to the mailing, the Company acted "with reasonable promptness" (14a–7(b)).

■ Thus, Knapp's case for preliminary injunctive relief stands or falls on the question whether defendants unduly delayed the transmission to the plaintiff of the information required by 14a–7(a). Although the question is close, we think that plaintiff's proof of delay between October 10th and 16th is insufficient for her to carry the day, especially since one day was required for the transfer agent to collect the information and two other days fell on a weekend. On the record before us, we are unable to say that plaintiff has demonstrated a probability of success on the merits.

This determination makes it unnecessary to discuss the many defenses raised by defendants, any one of which, if established, would preclude preliminary relief, even if plaintiff's own case were otherwise strong enough to warrant it. We note, however, that these defenses are substantial and that the proof adduced as to them is persuasive and fortifies the determination that it is improbable, as the record now stands, that plaintiff would prevail on the merits.

We turn, therefore, to the second test discussed in *Pride* which requires plaintiff to demonstrate that she has "raised serious questions going to the merits and that the balance of hardships [tips] sharply in [her] favor." 482 F.2d at 264. Both sides have "raised serious questions going to the merits," however, we find that the balance of hardships does not favor plaintiff's position.

■■ Denial of injunctive relief will maintain the status quo at the expense of delaying the possible vindication of plaintiff's rights. The most serious element of the delay, from plaintiff's point of view, is that it will perpetuate in office directors whom she considers unworthy of trust. However, this hardship must be viewed in the perspective of the realization that even if she is accorded everthing she demands, as the record now stands, plaintiff's chances of ousting management appear slender. On the other hand, granting preliminary relief will in effect give plaintiff the final relief she seeks by removing the defendant directors from office. It will put the Company to the considerable inconvenience and expense of reconvening a shareholders meeting and conducting a new election, without plaintiff having demonstrated even a probability of success on the merits. Such a result would be a misuse of the preliminary injunction which is intended "to guard against a change in conditions which will hamper or prevent the granting of such relief as may be found proper after the trial of the issues." United States v. Adler's Creamery, 107 F.2d 987, 990 (2d Cir. 1939). As Judge Pollack observed in Heldman v. United States Lawn Tennis Association, 354 F.Supp. 1241, 1249 (S.D.N.Y.1973): "It is improper to issue a preliminary injunction where such a grant would effectively provide all the relief sought in the complaint." Dunn v. Retail Clerks International Ass'n, 299 F.2d 873 (6th Cir. 1962); *See also* Miami Beach Federal Savings & Loan Ass'n v. Callander, 256 F.2d 410, 415 (5th Cir. 1958). Accordingly, we conclude that the balance of hardships favors defendants and that the second *Pride* test is not satisfied.

■ Plaintiff also requests this Court to order the Company to send out to shareholders at the Company's expense, a communication describing this lawsuit and outlining the terms of a merger proposal made by a third party not before the Court. We are aware of no basis for ordering the Company at this stage of the proceeding to bear the expense of mailing such a communication and we decline to do so.

Plaintiff's motion for a preliminary injunction is denied.

It is so ordered.