**DIVERSIFIED MORTGAGE INVESTORS,**
**Plaintiff-Appellee,**

v.

**U. S. LIFE TITLE INSURANCE COMPANY OF NEW YORK,**
**Defendant-Appellant.**

**No. 363, Docket 75-7428.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 8, 1976.

Decided June 30, 1976.

Jesse I. Levine, New York City (Shaw & Levine, New York City, of counsel), for defendant-appellant.

Dorothy F. Gray, New York City (Trubin, Sillcocks, Edelman & Knapp, New York City, Paul E. Roberts, Howard M. Goldstein, New York City, of counsel), for plaintiff-appellee.

Before TIMBERS, VAN GRAAFEILAND and MESKILL, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York which granted plaintiff a preliminary injunction and denied defendant's motion to dismiss the complaint. The preliminary injunction permanently amended the provisions of a policy of title insurance between appellant and appellee by negating several of the terms and conditions contained therein. For the reasons hereafter discussed, we think this relief which was final in nature was improperly granted in this interim order; and we reverse that portion of the order. Defendant's motion to dismiss was properly denied; and, as to that portion of the order, we affirm.

No testimony was introduced in the District Court, and we, like the District Judge, must attempt to sketch in the factual background of the dispute from the affidavits and the pleadings. From these, it appears that plaintiff-appellee, Diversified Mortgage Investors (DMI), is a real estate investment trust and defendant-appellant, U. S. Life Title Insurance Company of New York (USL), is a title insurance company with a branch office in the City of Albany. Beginning in 1971, DMI made a number of mortgage loans to Sleepy Hollow Lake, Inc. for the development of a recreational housing community in Greene County, New

York. Although it is not clear from the motion papers how many loans were made, an affidavit submitted on behalf of USL indicates that DMI was the mortgagee in four separate mortgages totaling in excess of twenty-one million dollars.

In any event, the first mortgage conveyed to DMI was for twelve million dollars, covering loans to be made in installments; and USL was requested to issue a title insurance policy in the amount of five million dollars with an endorsement to increase coverage up to twelve million dollars "upon receipt of applicable premiums and proof of no intervening liens or encumbrances." This policy was issued on September 29, 1971, in the face amount of five million dollars, and USL says that this amount was not increased thereafter by the payment of any additional premiums.

In 1974, Sleepy Hollow Lake, Inc. defaulted on its mortgage payments, and it was found that almost two million dollars in mechanic's liens had been filed against the mortgaged property. On January 21, 1975, a number of these lienors started a mechanic's lien foreclosure action in Supreme Court of Greene County, in which DMI, as an apparent prior lien holder, was not named a defendant. When that action appeared on the Greene County trial calendar in April 1975, a motion was made to amend the complaint to bring in DMI as a defendant and to allege the priority of the mechanic's liens over its mortgage because of the failure of DMI to file a building loan statement as required by N.Y. Lien Law § 22 (McKinney 1966). This section provides that a building loan contract, containing certain specified information, must be filed in the office of the clerk of the county in which the land is situated and that, if it is not so filed, the interest of each party to the contract in the real property affected thereby shall be subject to subsequently filed liens. USL was asked to undertake the defense of this action on behalf of DMI and did so, taking the position that the loan agreement

which it insured was not a building loan contract.

DMI also demanded of USL that it settle with the mechanic's lienors and secure the discharge of their liens. When USL refused to do this, DMI commenced the action below and refused thereafter to cooperate with USL in the defense of the state foreclosure action. DMI's complaint in the District Court is for a declaratory judgment: (1) declaring that USL negligently failed to record the building loan agreement by reason of which it is "liable for all costs and expenses incurred in disposing" of the mechanic's liens;[1] (2) directing USL to immediately take all steps necessary to restore the priority of DMI's mortgage lien, "including settling, discharging or bonding of existing mechanic's liens so that they are properly cleared of record" or in the alternative permitting DMI to do so without prejudice to its rights under its insurance policy; and (3) awarding DMI damages for the negligence and bad faith of USL.

DMI then moved for a preliminary injunction which would require USL to discharge forthwith the mechanic's liens or alternatively would permit DMI to do so without prejudice to its rights under its policy of title insurance. DMI claimed that unless the liens were settled or otherwise disposed of to clear the record title immediately, its entire investment would be rendered worthless, asserting that the value of the uncompleted project is in the neighborhood of only $1.2 million. It further claimed that it could advance no more funds to complete the project, even though it was willing to do so, since any further advances would be inferior to the mechanic's liens. The District Judge granted such motion to the extent that he permitted DMI to settle, bond or otherwise dispose of the mechanic's liens without prejudice to any rights of USL "other than a disclaimer based upon lack of consent to settlement of the liens." It is this portion of the order which we reverse.[2]

1. In addition to issuing a title policy, USL also attended to the filing of the mortgage papers.

2. On the facts submitted to him by affidavit, the District Judge was correct in refusing to order USL to discharge the mechanic's liens.

Although it seems clear from the District Judge's short opinion that he felt little or no prejudice would accrue to USL from the order, it is also clear that he undertook to rewrite the contract between the parties by, in effect, eliminating therefrom certain clauses and provisions upon which the parties had agreed. These were the customary indemnity provisions reserving to the insurer its rights to defend any action relating to the interest insured in order to prevent or reduce loss;[3] requiring the insured to provide it with this opportunity;[4] and disclaiming coverage for any liability voluntarily assumed by the insured in settling any claim or suit without the written consent of the company.[5]

■■■ In proceeding to rewrite the contract between the parties, the District Judge said that he was preserving the rights of the litigants. We do not agree. A title insurance policy is a contract between insurer and insured, and the rights of the parties are as provided for therein. *Udell v. City Title Ins. Co.*, 12 App.Div.2d 78, 80, 208 N.Y.S.2d 504 (1st Dept. 1960). The parties having agreed upon their own terms and conditions, "the courts cannot change them and must not permit them to be violated or disregarded." *Whiteside v. North American Accident Ins. Co.*, 200 N.Y. 320, 325, 93 N.E. 948, 950 (1911); *Bronen v.*

*New York Abstract Co.*, 19 App.Div.2d 821, 243 N.Y.S.2d 664 (1st Dept. 1963) (mem.). Provisions such as the foregoing, which reserve to the insurer the control of litigation and settlement, have been consistently enforced. 7A Appleman, Insurance Law and Practice § 4714, at 587 (1962); 14 Couch on Insurance 2d § 51:19, at 521 (1965); 15 Couch, *supra*, § 57:172, at 803 (1966); 45 C.J.S. Insurance § 937, at 1071 (1946); *Kennelly v. London Guarantee and Accident Co.*, 184 App.Div. 1, 171 N.Y.S. 423 (1st Dept. 1918); *Freed v. Inland Empire Ins. Co.*, 154 F.Supp. 855, 859 (D.Utah 1957); *Ohio Casualty Ins. Co. v. Ross*, 222 F.Supp. 292, 296 (D.Md.1963).

■■■ Accordingly, an insured who does not comply with the terms of his policy by preserving for his insurer the opportunity to defend or compromise, is usually not entitled to recover under his contract. 9 Appleman, *supra*, § 5216, at 22 (1943); *Schefflin v. Title Guarantee and Trust Co.*, 262 App.Div. 913, 28 N.Y.S.2d 838 (2d Dept. 1941) (mem.), *aff'd*, 292 N.Y. 533, 54 N.E.2d 381 (1944) (mem.). The order appealed from, while attempting to "preserve" the rights of all the parties, irrevocably altered them. It permanently deprived USL of a contractual defense which, under normal circumstances, would be a valid one. This, we think, is not the proper function of an

---

A title insurance policy is a contract of indemnity, not of guaranty. Such a policy entitles the insured to indemnity only to the extent that its security is impaired and to the extent of the resulting loss which it sustains. 45 C.J.S. Insurance § 969 at 1162 (1946); 13 Couch on Insurance 2d § 48:108 at 582 (1965); Annot., 60 A.L.R.2d 872, 976 (1958); *Grimsey v. Lawyers Title & Ins. Corp.*, 38 A.D.2d 572, 328 N.Y.S.2d 474 (2d Dep't 1971) (mem.), *modified on other grounds*, 31 N.Y.2d 953, 341 N.Y.S.2d 100 (1972) (mem.); *Goode v. Federal Title & Ins. Corp.*, 162 So.2d 269 (Fla.Ct.App.1964); *Ring v. Home Title Guaranty Co.*, 168 So.2d 580 (Fla. Ct.App.1964); *Sattler v. Philadelphia Title Ins. Co.*, 192 Pa.Super. 337, 162 A.2d 22 (Super.Ct. 1960); *Wheeler v. Equitable Trust Co.*, 221 Pa. 276, 70 A. 750 (1908). Because there are unresolved issues as to the value of the mortgaged property and the priority and provability of liens, determination of the extent of the insurer's obligation must await trial.

**3.** "This company shall have the right and may, at its own cost, maintain or defend any action or proceeding relating to the title or interest hereby insured, or upon or under any covenant or contract relating thereto which it considers desirable to prevent or reduce loss hereunder."

**4.** "In all cases where this policy requires or permits this company to prosecute or defend, the insured shall secure to it the right and opportunity to maintain or defend the action or proceeding, and all appeals from any determination therein, and give it all reasonable aid therein, and hereby permits it to use therein, at its option, its own name or the name of the insured."

**5.** "No claim for damages shall arise or be maintainable under this policy . . . for liability voluntarily assumed by the insured in settling any claim or suit without the written consent of this company."

interim injunction order. Whatever the merits of DML's claim that USL should not be allowed unreasonably to rely on the consent disclaimer in the contract, a determination of the validity of that disclaimer in any particular case should await full explication of the facts at trial.

▮ The purpose of a preliminary injunction is to maintain the status quo pending a final determination on the merits. *Danielson v. Local 275, Laborers Int'l Union*, 479 F.2d 1033, 1037 (2d Cir. 1973); *American Mercury v. Kiely*, 19 F.2d 295, 297 (2d Cir. 1927). It provides relief which is "interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive, characterized by its for-the-time-beingness." *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 742 (2d Cir. 1953). It should not be used as a device for creating a new contract between the parties or deciding questions of contract breach, properly determinable after trial. *Unicon Management Corp. v. Koppers Co.*, 366 F.2d 199, 204 (2d Cir. 1966); *Foundry Services, Inc. v. Beneflux Corp.*, 206 F.2d 214, 216 (2d Cir. 1953); *Interphoto Corp. v. Minolta Corp.*, 295 F.Supp. 711, 723 (S.D.N.Y.), *aff'd*, 417 F.2d 621 (2d Cir. 1969) (per curiam); 43 C.J.S. Injunctions § 77, at 547 (1945). It is not an adjudication on the merits, *Benson Hotel Corp. v. Woods*, 168 F.2d 694, 696 (8th Cir. 1948); *Walker Memorial Baptist Church v. Saunders*, 285 N.Y. 462, 474, 35 N.E.2d 42 (1941), and it should not grant relief properly awarded only in a final judgment. *Dunn v. Retail Clerks Int'l Ass'n*, 299 F.2d 873, 874 (6th Cir. 1962); *Miami Beach Federal Savings & Loan Ass'n v. Callander*, 256 F.2d 410, 415 (5th Cir. 1958); *Dorfmann v. Boozer*, 134 U.S.App.D.C. 272, 414 F.2d 1168, 1173 n. 13 (1969); *Knapp v. Walden*, 367 F.Supp. 385, 388 (S.D.N.Y.1973); *Heldman v. United States Lawn Tennis Ass'n*, 354 F.Supp. 1241, 1249 (S.D.N.Y.1973).

▮ Furthermore, it is well settled that a preliminary injunction is an extraordinary remedy that should not be granted except upon a clear showing that there is a likelihood of success and irreparable injury,

*Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319, 323 (2d Cir.), *cert. denied*, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969); *Sanders v. Air Line Pilots Ass'n Int'l*, 473 F.2d 244, 248 (2d Cir. 1972), or that there is an important and difficult issue to be determined justifying more deliberate investigation and that the "balance of hardships tips decidedly toward the party requesting the temporary relief." *Checker Motors Corp. v. Chrysler Corp., supra*, 405 F.2d at 323; *Gulf & Western Industries, Inc. v. Great A. & P. Tea Co., Inc.*, 476 F.2d 687, 692–99 (2d Cir. 1973); *San Filippo v. United Bro. of Carpenters & Joiners*, 525 F.2d 508 (2d Cir. 1975).

▮ Whatever DMI's chances of success on the merits of its claims may be, an issue upon which we express no opinion, we are hard pressed to find any irreparable harm which is causally related to USL's reliance on its contractual rights. DMI has made absolutely no showing that it could not have disposed of the mechanic's liens without the district court's *prior* assurance that USL's refusal to consent would be an invalid defense to an action on the policy. There may be very practical reasons why this procedure may be unavailable to DMI, but it has made no showing of such reasons on the record of this case. DMI's sole claim throughout has been that it cannot secure nor can it advance any more funds toward the project's completion until the mechanic's liens have been discharged. That may be so; but, if DMI wishes the Sleepy Hollow project to move ahead, it has the right to settle with the mechanic's lienors, despite the opposition of USL, and to litigate the effect of the settlement upon its contractual rights at trial. We make no present determination as to what effect, if any, such a settlement will have upon DMI's eventual right of indemnity under its title policy or on its claim against USL based upon negligence and bad faith. This determination must await full development of all the facts. Our holding now is limited to a declaration that on the facts presented by affidavit to the District Court, USL should not have been precluded by a preliminary

injunction order from relying in the future on the lawful provisions of its insurance contract.

■ We are, of course, reluctant to disturb the order of the district court which is substantially one of discretion. However, as in *Dopp v. Franklin National Bank,* 461 F.2d 873 (2d Cir. 1972), this is not a case where there was an evidentiary hearing below and the credibility of witnesses played an essential part in the District Judge's determination, and we therefore exercise more latitude in review. *See also San Filippo v. United Bro. of Carpenters & Joiners, supra.* We have concluded that the affidavits submitted in support of DMI's motion for a preliminary injunction showed insufficient casually related irreparable injury to support the District Judge's order which permanently deleted from the title insurance policy those provisions giving the insurer the control of litigation and settlement and that it was an abuse of discretion for the District Judge to grant such final relief in this interim order.

■ Finally, although DMI could very well have cooperated with USL in the state foreclosure suits and perhaps have had a resolution of the priority question in its favor many months ago, DMI was not precluded from federal suit. Its complaint against USL, seeking damages for negligence and bad faith as well as declaratory relief, states a cause of action. USL's motion to dismiss the complaint was properly denied.

We reverse that part of the district court order granting plaintiff-appellee preliminary injunctive relief and affirm that part of the order denying defendant-appellant's motion to dismiss the complaint.[6]

TIMBERS, Circuit Judge (dissenting):

Since we have no appellate jurisdiction whatsoever to review the order of the district court, this appeal should be dismissed. From the majority's refusal to do so, I respectfully but emphatically dissent.

There is no policy more basic than that against piecemeal, premature appellate review in the federal courts. This policy is deeply rooted in the command of Congress and controlling decisional law of the Supreme Court and the other federal appellate courts, including ours. *Clark v. Kraftco Corporation,* 447 F.2d 933, 936 (2 Cir. 1971); *Build of Buffalo, Inc. v. Sedita,* 441 F.2d 284, 286 (2 Cir. 1971); *Western Geophysical Co. of America v. Bolt Associates, Inc.,* 440 F.2d 765, 769–70 (2 Cir. 1971); *American Express Warehousing, Ltd. v. Transamerica Ins. Co.,* 380 F.2d 277, 280 (2 Cir. 1967); *Glenmore v. Ahern,* 276 F.2d 525, 545 (2 Cir.), *cert. denied,* 362 U.S. 964 (1960).

The relief granted by the district court here clearly was a declaratory judgment with respect to one but less than all claims asserted.[1] It simply permitted plaintiff

---

**6.** We are unable to accept the dissent's eleventh hour contention that this Court lacks jurisdiction to adjudicate the instant appeal. Neither the terminology utilized nor the substance of the order permit the conclusion that Judge Weinfeld's order was intended to constitute a partial grant of the declaratory judgment ultimately sought. The relief applied for below by plaintiff was cast in the form of a claim for preliminary injunction. *See Abercrombie & Fitch Co. v. Hunting World, Inc.,* 461 F.2d 1040, 1043 (2d Cir. 1972) [Timbers, *C. J.,* concurring]. More importantly, Judge Weinfeld's order speaks clearly in terms of "preserving" the rights of the litigants "during the pendency of this action." The obvious intention of 28 U.S.C. § 1292(a)(1) was to permit an appeal from just such an interlocutory order that "temporarily" grants part or all of the ultimate relief prayed for in the complaint. 9 Moore's Federal Practice ¶ 110.20[1] at 232 (1975).

**1.** Judge Weinfeld's unreported opinion of July 16, 1975—which strikes me as a gem of clarity, conciseness and correctness—is as follows:

"Edward Weinfeld, D. J.

More than 1200 individual residential lot purchasers in a 1900 acre project are caught in the cross-fire of a controversy between plaintiff, which advanced substantial funds for the development of the property secured by a first mortgage, and defendant, which issued title insurance to plaintiff. Their controversy centers about (1) the priority of mechanic's liens filed against the property as against plaintiff's first mortgage, and (2) defendant's liability in the event the mechanic's lienors' asserted priority is sustained. The issue of priority is yet to be determined in a pending state Supreme Court mechanic's lien foreclosure action, wherein the instant defendant title insurance company, in repre-

during the pendency of the action "to settle, bond or otherwise dispose of the mechanic's liens so that they are discharged of record . . . ." Judge Weinfeld's opinion and order does not provide for any injunctive relief at all.[2] The relief granted does not require any affirmative action by U.S. Life, nor does it prevent U.S. Life from doing anything. It merely declares the rights of the parties to one of numerous claims. In short, since the relief granted by the district court was declaratory rather than injunctive, we have no appellate jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) (1970).

The fact that the parties loosely refer to the relief sought and granted as a preliminary injunction does not make it so. In determining the nature of the relief for purposes of § 1292, we must look "not to terminology, but to 'the substantial effect of the order made.'" *McCoy v. Louisiana State Board of Education*, 345 F.2d 720, 721

(5 Cir. 1965), and authorities there cited. It is the operative facts giving rise to an enforceable right which constitutes a "claim". *Original Ballet Russe, Ltd. v. Ballet Theatre, Inc.*, 133 F.2d 187, 189 (2 Cir. 1943). When such "claim" is squared against the relief granted or withheld by the district court's judgment or order, that determines whether injunctive relief has been granted or refused for purposes of federal appellate jurisdiction. Applying that test here, no injunctive relief was sought, granted or refused so far as the instant appeal is concerned.

Whatever might be the posture of this appeal if certification had been sought and obtained under Fed.R.Civ.P. 54(b) or 28 U.S.C. § 1292(b) (1970), we need not determine on the record before us. The stark fact is that, absent such certification, the order is not final and we therefore have no appellate jurisdiction pursuant to 28 U.S.C. § 1291 (1970).

senting plaintiff under the title insurance policy, is resisting the mechanic's lienors' claims.

Plaintiff in this declaratory judgment action contends that because of the defendant's failure to file and record required instruments on its behalf, the mechanic's liens have priority over its first mortgage. It seeks, among other relief, leave to settle the mechanic's lien claims without prejudice to its rights against the defendant, whose consent to settlement is required under the title insurance policy. The defendant has refused such consent based upon its contention that the mechanic's lienors are not entitled to priority. Upon argument this court suggested, pending a trial of this lawsuit, a disposition without prejudice to the rights of either party. The proposal was not accepted.

Obviously, the mechanic's liens, which remain of record unless discharged, are a cloud upon title to the entire property. Their continued existence has prevented completion of the project and delivery of marketable title to existing purchasers. While the parties to this litigation are engaged in their controversy, work on the project has been halted. The 1200 innocent lot purchasers, some of whom have paid in full for their lots and most of whom have made substantial down payments, face irreparable injury unless development of the project is resumed. Plaintiff also is exposed to irreparable injury by the standstill situation resulting from the default of the developer and unsatisfied mechanic's liens.

The court is satisfied that the interests of the plaintiff and, more importantly, the lot purchasers can be protected without prejudice to the ultimate rights of the defendant. Under the circumstances the plaintiff, during the pendency of this action, is permitted to settle, bond, or otherwise dispose of the mechanic's liens so that they are discharged of record, but without prejudice to the rights of plaintiff and defendant in this or the state court action—particularly without prejudice to any right of disclaimer of liability which is or may become available to the defendant, other than a disclaimer based upon lack of consent to settlement of the liens.

The court deems this an equitable disposition which preserves the rights of the litigants and at the same time protects innocent third parties not involved in their controversy. Moreover, if plaintiff finally prevails and defendant is held liable under the policy of insurance, settlement of the mechanic's lienors' claims at less than their claimed amounts necessarily will inure to the benefit of the defendant.

The defendant's motion to dismiss the complaint and to stay this action is denied.

[Sgd] Edward Weinfeld
United States District Judge

Dated: New York, N.Y.
July 16, 1975"

2. While "defendant's motion . . . to stay this action is denied" (last paragraph of district court opinion), no cross-appeal has been taken from that portion of the order.

My quarrel is not so much with the majority since the issue of our appellate jurisdiction was not raised or claimed by counsel for either side. It nevertheless is our duty independently to examine the jurisdictional underpinning of any case that comes before us, including our appellate jurisdiction, regardless of whether the issue is raised by counsel. See *Papilsky v. Berndt*, 503 F.2d 554 (2 Cir.), *cert. denied*, 419 U.S. 1048 (1974); *Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800, 807 (2 Cir. 1971); *Gem Corrugated Box Corp. v. National Kraft Container Corp.*, 427 F.2d 499, 501 n.1 (2 Cir. 1970). What Judge Anderson so aptly said in his dissenting opinion in *Build of Buffalo, Inc. v. Sedita, supra*, 441 F.2d at 290, likewise is applicable here:

"This appeal is another example of the not infrequent tendency of counsel to be inattentive to important questions of appellate jurisdiction. *Alart Associates, Inc. v. Aptaker*, 402 F.2d 779 (2 Cir. 1968)." (Citing Rule 54(b) and other authorities which hold that an order is not final and therefore not appealable under § 1291 in the absence of compliance with that rule.)

As for the merits of the instant appeal, I differ sharply with the majority's disposition of U.S. Life's claims under the no-settlement clause in DMI's insurance contract and would affirm Judge Weinfeld's order in all respects. The reasons for my views on the merits appropriately should be reserved for another day—if and when we have appellate jurisdiction to review the issue to which the majority opinion is addressed.

I would dismiss the appeal for lack of appellate jurisdiction.