Jean K. **WAGNER**, Plaintiff,

v.

**LONG ISLAND UNIVERSITY** et al., **Defendants.**

No. 75C2106.

United States District Court, E. D. New York.

Sept. 1, 1976.

Rabinowitz, Boudin & Standard, New York City, for plaintiff.

Poletti Freidin Prashker Feldman & Gartner, New York City, for defendants.

## MEMORANDUM AND ORDER

PRATT, District Judge.

Plaintiff is an assistant professor in the department of Sociology and Anthropology at the C. W. Post Center of Long Island University (the college). On the day that this decision is being prepared, her present employment contract terminates, since after review by the faculty and administrative procedures, the college determined not to grant her tenure. Notice of that decision was given to plaintiff in the spring of 1975, and she declined to have her status reconsidered during the 1975/76 school year.

Claiming that her denial of tenure resulted from unlawful sex discrimination, plaintiff brought this action under 42 U.S.C. § 2000e–5(f)(3) and 29 U.S.C. § 185(a) seeking to eliminate all unlawful sex discrimination with respect to her employment and to compel the college to reappoint her to the faculty with tenure. The action has been pending since December, 1975; although extensive discovery has already taken place, plaintiff has indicated that further pretrial proceedings will take until approximately January, 1977 at which time plaintiff will be prepared to try the case on the merits.

Since plaintiff's present contract with Post terminates as of August 31, 1976, plaintiff has moved for a preliminary injunction directing the college to continue her in their employment as an assistant professor of anthropology.

The court has twice heard arguments on various aspects of the parties' positions and in addition held an evidentiary hearing which ran for some three hours commencing at approximately 5:00 P.M. on August 30, 1976. That hearing, as ordered by the court after considering the other arguments of the parties, focused upon the questions of irreparable harm, balancing of hardships, and the relative equities of the parties' positions.

The Court of Appeals for the Second Circuit has recently commented on the standards for a preliminary injunction as follows:

"The purpose of a preliminary injunction is to maintain the status quo pending a final determination on the merits. [citations] It provides relief which is 'interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive, characterized by its for-the-time-beingness.' [citation] It should not be used as a device for creating a new contract between the parties or deciding questions of contract breach, properly determinable after trial. [citation] It is not an adjudication on the merits [citations], and it should not grant relief properly awarded only in a final judgment. [citations].

"Furthermore, it is well settled that a preliminary injunction is an extraordinary remedy that should not be granted except upon a clear showing that there is a likelihood of success and irreparable injury [citations], or that *there is an important and difficult issue to be determined justifying more deliberate investigation and that the 'balance of hardships tips decidedly toward the party requesting the temporary relief.'* [citations]." *Diversified Mortgage Investors v. U. S. Life Title Insurance Company of New York*, 544 F.2d 571, at 576 (1976) (emphasis supplied).

As a result of the arguments of the parties and the extensive documentation furnished in connection with this motion, as well as the other papers on file with the clerk, I have concluded that the underlying question of sex discrimination raised by the plaintiff cannot be disposed of at this stage, but is a difficult, complex issue requiring

detailed analysis and extensive testimony. Nor could it be said that the issue is unimportant, since it charges one of Long Island's major educational institutions with direct and flagrant violations of federal laws against discrimination in employment based on sex. Accordingly, the court finds that there is present here an important and difficult issue which must ultimately be determined and which certainly justifies more deliberate investigation than could be afforded at this preliminary stage of the lawsuit. The question on this motion, therefore, becomes one of the "balance of hardships". Applying to the facts of this case a balance of hardships standard is not an easy task. As will be seen from the discussion that follows, the verbal standards offered to us by the reported decisions do not easily fit the circumstances here.

Plaintiff contends that she will be irreparably harmed if her employment by the college is permitted to terminate while this action is still pending. She argues that the college's discrimination against women will eventually be established and that the court must order her reinstatement. The hardship and injury which she claims include the following:

1. She would be out of a job. Plaintiff has withdrawn any claim of economic hardship, but her psychiatrist has submitted an affidavit to the effect that her own psychological condition makes it essential that she continue teaching.

2. She most likely would be unable to obtain another job in her field of teaching anthropology. She has contacted at least four other local colleges, none of whom have openings at the present time.

3. She would suffer a distinct loss of professional standing. She claims that her professional reputation depends upon a continuity of employment, and that a disruption of that continuity at this time would not only affect her standing in the field, but would also disrupt her relationships with the faculty, her students, and with various publications, professional associations, and committees at the college.

4. She would suffer a loss of her innovative teaching techniques and of new courses which she has prepared for teaching at the college in the future.

5. She presently has an offer to publish a textbook in anthropology (provided her first chapter and proposed table of contents are approved by the publisher). Plaintiff testified that she believed her chances of being chosen for that assignment would be greatly diminished if her employment were to be terminated, since the publisher would wish to have the book identified with a present faculty member of a recognized institution. She also testified on cross-examination that the publisher was a close personal friend who had made the offer to her at a party held on August 8, 1976.

6. Plaintiff also testified that she is working on two articles for publication in professional journals (having started them within the last month) and that they would not be accepted for publication unless she was teaching at a recognized institution.

7. Plaintiff is 56 years old with only nine years until retirement, a circumstance which she claims makes it more unlikely that she could be rehired in another college.

Post urges three points of claimed injury or hardship which would result if the preliminary injunction were to be granted:

1. A possibility of de facto tenure. President Cook testified that the administration had some concern that if any faculty member were to be continued beyond the probationary period when tenure had not been granted in the regular way, a possibility would arise that the faculty member would be entitled to a de facto tenure status despite what the parties themselves, or even the court, might say about it.

2. A bad example to others. Dr. Cook pointed out that the college is subject to the rules of the Association of University Professors, to its own collective bargaining agreement, and to the traditions of higher education, all of which require approval of faculty committees before tenure is granted. According to him, continuation of plaintiff's employment with the university

even pending determination of this action would make it more difficult to maintain the integrity of the faculty and would be a detriment to the institution by introducing another avenue for the continuation of employment in addition to the traditional standards.

3. Economic injury. President Cook pointed out that by using part time help the college could have the same courses taught to students for less money than it would have to pay to the plaintiff.

None of the claimed injuries to either party can be brushed aside as non-existent or even frivolous. Both parties have advanced their claimed injuries in good faith, believing them to be decisive of the question of balancing hardships.

In *Johnson v. University of Pittsburgh*, 359 F.Supp. 1002, (W.D.Pa.1973) the district court granted a preliminary injunction restraining discharge of the plaintiff by the university until final determination of her action which, as here, was grounded on a claim of sex discrimination. After finding a strong likelihood of plaintiff's success on the merits, the court addressed itself to the injuries to the plaintiff:

"According the other considerations governing the issuance of a preliminary injunction proper weight, we note that this is not the ordinary case of a salaried employee who is wrongfully discharged where a remedy in damages is adequate. Rather here we have a Ph.D. with an outstanding professional reputation which will be unquestionably damaged by this. Her ability to get a job will certainly be impaired because of inability to secure recommendations from her present employers. It appears that jobs are very difficult to obtain at this time for people in this field and the mere fact of her discharge or failure to receive tenure from the University of Pittsburgh would naturally chill her chances of obtaining another position." (359 F.Supp. at 1009)

In that case there was an added factor that the plaintiff, a research scientist, had been given a research grant by the National Institution of Health which could be carried forward only if she remained with the university. On those factors taken together the court noted that it had "very little difficulty in finding irreparable hardship to plaintiff". (359 F.Supp. at 1010)

On the other hand, in *Faro v. New York University*, 502 F.2d 1229 (CA 2 1974), also an attempt by a college professor to overturn her failure to receive tenure on grounds of sex discrimination, the court noted that the plaintiff there was "in no way different from hundreds of others who find that they have to make adjustments in life when the opening desired by them does not open." (502 F.2d at 1232).

The court finds great difficulty in applying here the standards articulated by the Second Circuit in its recent cases on the tests for a preliminary injunction. *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738 (CA 2 1953); *Checker Motors Corporation v. Chrysler Corporation*, 405 F.2d 319 (CA 2 1969) cert. den. 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969); *Diversified Mortgage Investors v. U.S. Life Title Insurance Company of New York, supra.* The verbal test imposed where there is an important and difficult issue which justifies more deliberate investigation is that the "balance of hardships" must tip "decidedly" toward the plaintiff. In this case, unquestionably, the plaintiff will suffer some loss of professional standing if her employment at Post is interrupted. It is impossible to say, however, how harmful that loss would be, whether it would continue beyond a reinstatement in the event that plaintiff were ultimately to be successful, or indeed what the long term ramifications of that interruption might be. I have discounted the claim of possible psychic injury to the plaintiff, but find that her chances of obtaining the contract for publishing the new textbook, as well as her chances for having two professional articles published, would be diminished to some extent by an interruption in her employment.

Plaintiff's argument that she has only nine years to retirement and would find it difficult to obtain another job is not one properly to be weighed on this application

for interim relief which necessarily assumes that she will be ultimately successful in compelling the college to retain her in permanent employment. If we were to assume that she will ultimately fail in this action, then her age and difficulty of obtaining other employment would no longer be relevant.

It is obvious that an interruption of plaintiff's employment at this time would disrupt the continuity of her activities at college. True, there would be injury to the plaintiff; equally true, the extent of the injury cannot be measured. But there are no special or unusual circumstances which render plaintiff's case extraordinary or outstanding in any sense. Nevertheless, the injuries which she would suffer from a wrongful interruption of her employment at this time could not in any real sense be repaired or undone.

On the other hand, the arguments advanced by the college show no real injury at all which would result from retaining the plaintiff as a faculty member for another semester or even a full year. The college has four anthropology courses which are now without an assigned teacher but which have sufficient enrollment to warrant their being taught in the semester which begins in a few days. Plaintiff has previously taught all four of those courses; indeed, she is the only person who has taught one of them. As of August 30, 1976, the college had hired no replacement teachers, and indeed, did not intend to hire a full time faculty member to replace the plaintiff. Its testimony was simply that it would hire "adjunct", i. e., part time, teachers to cover the courses which could equally well be taught by plaintiff. The college has raised no issue over the plaintiff's competency to teach the courses in question; there is no evidence to show that any of the adjunct teachers would perform the teaching services any better than the plaintiff.

As to the claimed economic injury, plaintiff's annual salary is approximately $15,000. The cost of the adjunct teachers to perform the same work would be less than plaintiff's salary, but unlike the situation in *Faro v. New York University, supra,* 502 F.2d 1229, Post has operated for the last two years with a budget surplus of approximately $300,000 each year. Moreover, plaintiff has offered to post a bond indemnifying the university for any salary differential in the event that she should ultimately be unsuccessful in the case.

The college's argument of a possible de facto tenure is without merit. If this court were to order a temporary continuation of plaintiff's employment, coupled with plaintiff's waiver, already given in open court, of any additional rights to tenure which might otherwise arise out of the court ordered continuation of employment, the college's fears of some other agency asserting a claim on behalf of plaintiff are without foundation. Such a claim would not succeed; indeed, as a condition of relief plaintiff could be enjoined by this court from accepting tenure based upon such a claim.

The college's remaining argument, that the granting of a preliminary injunction here would set a bad example for other faculty members, is hardly worth discussion beyond noting that the court would not favor discouraging meritorious claims, any more than it would encourage meritless claims.

In short, while the plaintiff's showing of irreparable injury or hardship does not in this court's opinion involve extraordinary or unusual circumstances, nevertheless the court finds that the plaintiff would be injured by an interruption of her employment at this time, and that the injury would be both significant and substantial to her, although virtually impossible to weigh. On the other hand, the college has established no significant harm which would result from a continuation of plaintiff's employment pending determination of this action.

Behind all injunctive relief lies the court's inherent equity powers. On balance, therefore, the interests of justice require that the preliminary injunction be granted on condition that the plaintiff file with the clerk a surety bond in the sum of $10,000 conditioned upon payment to the defendant college, in the event plaintiff is ultimately

unsuccessful, of any differential in salary as indicated above, together with the usual conditions for such injunction bonds.

In order to avoid any lapse in the plaintiff's employment, the court will endorse this memorandum and decision with the usual "so ordered" direction. The plaintiff is directed, however, to submit a proposed formal preliminary injunction order intended to supersede the court's informal direction, such submission to be on two days' notice of settlement to the defendants' attorney, and said proposed order to be accompanied by the required surety bond.

SO ORDERED.